IN THE

# Supreme Court of Appeals

OF

# VIRGINIA.

———

## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

### MARKS' ADM'R V. PETERSBURG RAILROAD CO.

June 11th, 1891.

| | |
|---|---|
| 88 | 1 |
| 88 | 312 |
| 88 | 1 |
| 90 | 21 |
| 90 | 266 |
| 90 | 497 |
| 88 | 1 |
| 91 | 179 |
| 88 | 1 |
| 95 | 718 |
| 88 | 1 |
| 100 | 762 |
| 88 | 1 |
| e102 | 501 |
| 88 | 1 |
| 105 | 531 |
| 88 | 1 |
| 107 | 741 |
| 88 | 1 |
| d108 | 386 |
| 88 | 1 |
| f109 | 412 |
| 88 | 1 |
| 110 | 315 |

1. RAILROAD COMPANIES — *Crossings* — *Reciprocal Duties* — *Contributory Negligence—Exceptions.*—Where train is backed over crossing or frequented street, company must keep a look-out on leading car. But traveler approaching crossing must vigilantly use his eyes and ears and look in every direction to make sure crossing is safe. Failure so to do is contributory negligence, except where view of track is obstructed, or where party injured is passenger going to or from train, or where direct act of company's agent induced traveler to cross without precaution ; or where company, after discovering his negligence, fails to use due care to avert its consequences.

2. IDEM—*Case at bar.*—Plaintiff's intestate, a one-eyed woman fifty-three years old, reached within four feet of railroad track at crossing over frequented street and stopped on walkway to wait till freight train passed. It passed her, but stopped before its rear car had got half-way across the street, which was less than sixty feet wide. Brakeman at switch fifteen feet distant signalled engineer with hand and voice to back. Train moved slowly back, having no out-look on leading car.

In mean time intestate remained on walkway between brakeman and train, in unobstructed view of both. When train had reached within two or three steps of her she started across the track, was run over and killed—

HELD:

Company was guilty of negligence, but intestate's own negligence was the proximate cause of the injury, and plaintiff cannot recover.

*Davis & McIlwaine*, for plaintiff in error.

*Alexander Hamilton* and *R. B. Davis*, for defendant in error.

Argued at Richmond.  Decided at Wytheville.  Error to judgment of the hustings court of the city of Petersburg, rendered on the 15th of November, 1889, in an action of trespass on the case, wherein W. R. McKenney, administrator of Elmira V. Marks, deceased, was plaintiff, and the Petersburg Railroad Company was defendant.  The action was brought to recover damages for the alleged negligent killing of the plaintiff's intestate by the defendant company, at the intersection of its road with Market street, in the city of Petersburg, on the 27th of May, 1889.  The deceased, a woman fifty-three years of age, was killed by being run over by a backing freight train, as she was crossing the railroad.  There was a flagman at the crossing, but no look-out on the leading car, although an ordinance of the city provides that " when a train of cars is moving backwards on any railroad within the corporate limits, said railroad company shall be required to keep a person on the leading car of such train to give proper warning to persons in the act of crossing the track in front of said train of cars."  The evidence was conflicting as to whether the bell on the locomotive was being rung at the time.

The defendant's track extends for some distance in Washington street, which intersects Market street at the place of the accident.  The latter street, at that point, is " a much

traveled street, both by vehicles and pedestrians," and much shifting of trains is done there, there being a side track, also, in Washington street and a switch on either side of Market street. The railroad, like Washington street, runs east and west, and intersects Market street at right angles. The accident occurred a short while before sun-down.

At the trial the defendant demurred to the evidence, and the jury conditionally assessed the damages at $5,790. The court sustained the demurrer, and gave judgment for the defendant, to which judgment the plaintiff obtained a writ of error and *supersedeas* from one of the judges of this court.

LEWIS, P. (after stating the case), delivered the opinion of the court.

The rules which govern a case like this are well settled. A railroad company, undoubtedly, is bound to exercise care to avoid a collision where its road crosses a public highway, and the greater the danger the greater is the vigilance required. It has accordingly been held in numerous cases, independently of any statute or ordinance on the subject, that when a train is backed over a crossing in a frequented street, a look-out must be employed; that merely ringing the bell or sounding the whistle on the engine, when the train is standing near, with its rear to, the crossing, is not sufficient warning to passers-by of an intention to back the train, and that without other notice the company will be negligent.

The rights and duties, however, of the company and of the public are reciprocal, and hence no greater degree of care is required of the one than of the other. Both the company and the traveler on the highway are charged with the mutual duty of keeping a careful lookout for danger; and the degree of diligence required is such as a prudent man would exercise under the circumstances of the case in endeavoring to fairly perform his duty.

The traveler on the highway, when he approaches a crossing, must assume that there is danger, and act accordingly. The existence of the track is a warning of danger. He must, therefore, be vigilant; he must look and listen; he has no right to close his eyes and ears to the danger he is liable to incur, and if he does and injury results, he must bear the consequences of his folly or carelessness. In such a case he is the author of his own misfortune. *Beach, Cont. Neg.* § 65; *Continental Imp. Co.* v. *Stead*, 95 U. S. 161; *Grand Trunk Railway Co.* v. *Ives*, 144 *Id.* 408; *Nash* v. *R., F. & P. R. R. Co.*, 82 Va. 55; *N. & W. R. R. Co.* v. *Burge*, 84 *Id.* 63; 4 *Am. & Eng. Encyc. of Law*, 68, and cases cited.

In *N. Y. P. & N. R. R. Co.* v. *Kellam's Adm'r*, 83 Va. 851, where the subject is considered, it was held that a traveler on an intersecting highway, before crossing the railroad, must use his senses of sight and hearing; that he must look in every direction that the rails run, to make sure the crossing is safe, and that his failure to do so will, as a general rule, be deemed culpable negligence. The only exceptions to the rule, it has been decided, are these, viz: (1) Where the view of the track is obstructed, and hence where the injured party, not being able to see, is obliged to act upon his judgment at the time; in other words, where compliance with the rule would be impracticable or unavailing; (2) where the injured person was a passenger going to or alighting from a train, and hence under an implied invitation and assurance by the company to cross the track in safety; and (3) where the direct act of some agent of the company had put the person off his guard and induced him to cross the track without precaution. 2 *Wood, Ry. Law*, § 323, and cases cited.

In the present case the negligence of the defendant company is conceded. There was no look-out on the leading car of the backing train, as the city ordinance in such cases requires, nor were such precautions of any kind taken as were necessary to duly warn the deceased of the approaching danger. But the

question arises, Was *that* the cause of her death, or was she guilty of such contributory negligence as to defeat the action? For unless the negligence of the defendant was the immediate and proximate cause of the injury, the plaintiff is not entitled to recover. *R. & D. R. R. Co.* v. *Anderson*, 31 Gratt. 812; *Dun* v. *S. & R. R. Co.*, 78 Va. 645.

The case, viewed in the light of the rule applicable to a demurrer to evidence, is substantially as follows: ·

A few minutes before the accident occurred the deceased passed up Washington street, going west in the direction of Market street. When she reached the intersection of those streets she turned to the left (*i. e.* to the south), and started to cross the street. When within four feet of the railroad crossing she stopped on the walkway to wait for a freight train to pass, which was moving westwardly. This train, which consisted of an engine and three box-cars, was operated by an engineer and a fireman, who were on the engine, and a brakeman, who was riding on the rear car. Just before the rear of the train reached the crossing the brakeman jumped off the car and ran to a switch, about fifteen feet east of the crossing, to turn the switch for the train to back on the side track at that point.

The train passed over the crossing, where the deceased was standing, and stopped before its rear end had gotten half way across Market street, which is less than sixty feet wide. The switch in the mean time having been turned, the brakeman at the switch signalled the engineer back. One of the witnesses says he turned his face in the direction of the engineer and "hallooed to him to come back"; another says he blew his whistle for him to come back; but both say that with his hand he also waived or beckoned him back. This was within twenty feet of the deceased.

The signal was promptly obeyed, and the train moved slowly backwards, but without a look-out on the leading car, as already stated. There was, however, a flagman at the crossing. The

deceased meanwhile was standing on the granite walkway between the brakeman and the train, with an unobstructed view of both. After signalling the engineer, the brakeman turned his back to the crossing, and walked in the opposite direction, to couple the train, when it should get there, to a car standing on·the side track. The deceased did not move from her position above-mentioned until after the train had commenced to back, nor until the leading car had gotten within "two or three steps" from her, when she started across the track. But just as she had gotten her left foot over the last or southern rail, she was struck by the train, knocked down, and run over.

The point at which she fell was several feet east of the walkway, where blood and particles of human flesh were afterwards found on the track. In the collision she received injuries which caused her death within an hour afterwards.

The plaintiff's contention, in answer to the defence of contributory negligence, is (1) that the deceased was not conscious of the reverse movement of the train before she was struck; and (2) that, under the circumstances, she was not bound to have seen it. But can this position be maintained? We think not.

As to the first point, two of the defendant's witnesses, who were eye-witnesses of the occurrence, testify that when the train commenced to back she was standing on the granite crossing, close to the track. They say further, that when she started to cross the track she stepped to the left, "as if to walk around the train," and the place where she fell and the blood and flesh on the track tend to sustain this view—that is, that she saw the train approaching her and attempted to avoid it.

If this evidence be in conflict with the plaintiff's evidence, or any reasonable inferences from that evidence, it was, of course, waived by the demurrer to the evidence. But we perceive no such conflict. Neither Jennie Davis nor Lemuel Starke, the two principal witnesses for the plaintiff, testify to

the contrary, nor does any one else.   The former, in answer to the direct question whether the deceased, in crossing the track, moved in a straight line or swerved to the left, as if to avoid the train, said she did not know.   And Starke merely says, in a general way, that she was crossing on the cross-way. He does not say positively, however, that she was " on the crossway " when she was struck.

But waiving the defendant's evidence on this point, the result is the same.   If the deceased did not see the backing train, she ought to have seen it, for had she looked, or, in other words, had she exercised ordinary care, she could not have failed to see it.   It was her duty, as we have seen, to be vigilant, and the train was only a few feet from her, with nothing to obstruct her view of it, when she stepped in front of it. The locality, moreover, is an especially dangerous one, because it is much frequented, and many trains daily pass over it. Much shifting of cars is also done there.   This was presumably known to the deceased, as she had long been a resident of the city.   Yet, without taking ordinary precautions for her safety, she stepped in front of the train and was killed.   It would be strange if, under the circumstances of the case, the action could be maintained, notwithstanding the negligence of the defendant, for the defendant's negligence was no excuse for her want of care.   The language of the Supreme Court in *Railroad Company* v. *Houston*, 95 U. S. 697, is very pertinent to the present case.   In that case it was said :

" The negligence of the company's employees [in omitting to give proper signals] was no excuse for negligence on the part of the deceased.   She was bound to listen and to look, before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger.   Had she used her senses, she could not have failed both to hear and to see the train which was coming. If she omitted to use them and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far con-

tributed to her injuries as to deprive her of any right to complain of others. If, using them, she saw the train coming and yet undertook to cross the track instead of waiting for the train to pass, and was injured, the consequences of her mistake and temerity cannot be cast upon the defendant."

The fact, not before mentioned, that the deceased was blind in her right eye, does not affect the case; for that, instead of relieving her of the duty of ordinary care, imposed upon her the duty of greater precaution to avoid injury. 4 *Am. & Eng. Encyc. of Law*, 80; *Beach, Cont. Neg.*, § 147.

The plaintiff, however, contends that the case is not within the general rule to which we have alluded, because, he says, the deceased had the right to act upon the presumption that the train which had just passed her would not be backed without proper warning; and for this proposition he relies upon *Duame* v. *Chicago, &c., R. R. Co.*, 72 Wis. 523 (7 *Am. St. Rep.*, 879) and *French* v. *Taunton Railroad*, 116 Mass. 537.

As to these cases, it is enough to say that, in their facts and circumstances, they widely differ from the case at bar. In the first case, as the deceased was approaching the crossing in a buggy, a train passed over it and out of sight, the view at that point being obstructed. It then, without any warning whatever, immediately backed towards the crossing, struck the deceased and killed him. After the train passed, the deceased kept straight on, driving in a trot, and neither looked nor listened. The court recognized the general rule that a person approaching a railroad crossing must look and listen, but held that, under the peculiar circumstances of that case, the deceased was evidently surprised and thrown off his guard, and that the question of contributory negligence ought, therefore, to have been left to the jury. It accordingly reversed the action of the trial court directing a verdict for the defendant.

In the Massachusetts case, as the plaintiff approached the crossing in a light, open carriage, a train passed, and immediately afterwards she attempted to cross. There was no

warning given that other cars were approaching, and she did not look in the direction from which the train had come, and gave as a reason that she did not suppose one train would follow another so closely. In crossing the track she was struck and injured by a car that had been detached from the train for the purpose of making a flying switch, and it was held, as in the Wisconsin case, that the question of contributory negligence was for the jury.

This case was criticised and disapproved of by the Supreme Court of Rhode Island in the recent and well-considered case of *Ormsbee* v. *Boston, &c. R. R. Co.*, 14 R. I. 102, and held to be in conflict with both the earlier and later Massachusetts decisions. In the *Ormsbee Case* the plaintiff's intestate, a deaf mute, was struck and killed by train of cars, which was making a flying switch at a highway crossing. The engine passed the crossing towards the south, and then backed towards it on another track. As the engine was backing, the deceased, looking towards it, stepped upon the track without looking north, when the detached cars were approaching, and as he did so, he was struck by the forward car and killed. The plaintiff contended that the passing and backing of the engine diverted the attention of the deceased, and excused his not looking both ways. But the court, overruling this view, held that the failure of the deceased to look both ways was negligence as a matter of law, and therefore precluded a recovery, whatever may have been the defendant's negligence. After examining many authorities, it was said :

" This view of the case is sufficient to show the rule to be uniform and unquestionable, that a traveler in crossing a railroad, even in the absence of ordinary signals, must look up and down the track, except where he is unable to do so, or where, as a passenger or otherwise, he has an assurance of safety from the company which excuses him. Indeed, it is quite unusual to find so little difference in so many cases, and it must be for the reason that the rule is founded, not in

opinion or judgment, but in common prudence and experience to such an extent that courts can declare it as law."

The rule, as we understand it, stated a little differently and more fully, is this: If a person attempts to cross a railroad at a highway crossing, without using his senses of sight and hearing, even though the company be negligent, the law as well as common prudence condemns his act as careless. But this is a mere presumption, which may be repelled by evidence, showing that the case is within one or more of the exceptions to the general rule before mentioned. In the absence of such evidence, however, the contributory negligence of such person when injured will preclude a recovery, *unless the company might, by the exercise of ordinary care on its part, have avoided the consequences of the plaintiff's negligence.*

This qualification of the doctrine of contributory negligence is that laid down in the leading case of *Tuff* v. *Warman*, 2 C. B. (N. S.) 740, and so often recognized by this court. *R. & D. R. R. Co.* v. *Anderson,* 31 Gratt. 812; *Dun* v. *S. & R. R. Co.,* 78 Va. 645; *S. V. R. R. Co.* v. *Moose,* 83 *Id.* 827; *V. M. R. R. Co.* v. *White,* 84 *Id.* 498; *R. & D. R. R. Co.* v. *Pickleseimer,* 85 *Id.* 798; *R. & D. R. R. Co.* v. *Moore's Adm'r,* 78 *Id.* 93, 99. See, also, *Inland, &c. Coasting Co.* v. *Tolson,* 139 U. S. 551, 558; *Grand Trunk Railway Co.* v. *Ives,* 144 *Id.* 408.

Applying this test to the present case, we are of opinion that the plaintiff is not entitled to recover, for it is manifest that ordinary care on the part of the defendant could not have discovered the negligence of the deceased in time to avoid the accident. When the train began to back, she was in a place of safety, apparently waiting for the train to pass, and remained in that position until the train was within about seven feet from where she stood. It was then too late to have stopped the train in time to avoid the effects of her own careless (not to say reckless) act, even had there been a lookout on the leading car, and everything done which ought to have been done in the exercise of ordinary care.

Our conclusion, therefore, is that the judgment of the hustings court is right, and that the same must be affirmed.

RICHARDSON and HINTON, J's, concurred in the opinion.

LACY and FAUNTLEROY, J's, concurred in the result.

DECREE AFFIRMED.