# Richmond.

NORFOLK AND WESTERN RAILWAY CO. v. HOLMES' ADMINIS-
TRATOR.

' 109 407
f109 418
f109 419

March 11, 1909.

Absent, Keith, P. and Cardwell, J.

1. RAILROADS—*Grade Crossing—Care Required.*—A railroad company
   is bound to exercise care to avoid a collision when its road
   crosses a public highway at grade, and the greater the danger
   the greater is the vigilance required.

2. RAILROADS—*Negligence—Running Engines Backwards—Signals—
   City Ordinance—When Needless to Allege or Prove.*—Whether
   or not it is negligence to operate a locomotive engine backwards
   with no one on the tender to signal its approach is generally a
   question of fact for the jury, though under some circumstances
   it is negligence as a matter of law. To operate an engine back-
   wards, over a populous thoroughfare of a city, on a dark night,
   when it is "drizzly or misty," with no light burning, no bell
   ringing, preceded by no flagman, and without any watchman
   or warning of any kind to persons passing along said street is
   negligence, and if the allegations of the declaration are sufficient
   to warrant the introduction of such evidence, the same may be
   shown without reference to the existence, pleading or proof of
   a city ordinance requiring such precautions to be taken.

3. RAILROADS—*Negligence—Street Crossing—What Allegations and
   Proof of Negligence Sufficient.*—A declartion against a rail-
   road company for running over and killing a person at a street
   crossing in a city is sufficient when, after particularly describing
   the *locus in quo*, it alleges it to be the duty of the company to
   exercise due and ordinary care to keep a watch and lookout to
   avoid injuring persons passing over said crossing, and to give
   warning of the approach of its trains by ringing a bell, or by
   taking other means of notification so as to avoid such inquiry,
   and the breach of the duty so alleged. The particular mode

or precaution, to the exclusion of others, need not be alleged. Under such allegation and breach as is above stated it is competent for the plaintiff to prove that there was no flagman, no watchman, no person riding on the front of the engine, that the engineer could not see from his cab, and that no light was burning and no bell ringing.

4. Negligence—*Contributory Negligence—Case at Bar.*—Without reference to the rule which obtains on a demurrer to the evidence, a jury would have been well warranted in finding from the whole evidence in the case at bar that the plaintiff's intestate was not guilty of contributory negligence barring a recovery.

5. Demurrer to Evidence—*Detached Statement of Witness—Testimony as a whole.*—On a demurrer to the evidence, it is not permissible to take detached statements of a witness for the demurrant, and say that that particular statement is not contradicted by evidence for the demurree, but the statement of the witness must be taken as a whole, and if, when so considered, it cannot be reconciled with the demurree's evidence it must be rejected.

Error to a judgment of the Circuit Court of the city of Norfolk in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Hughes & Little,* for the plaintiff in error.

*Brooke & Brooke, Richard McIlwaine, Jr.,* and *J. F. Rutherford,* for the defendant in error.

Harrison, J., delivered the opinion of the court.

Mrs. Florence I. Holmes and Mrs. Mabel E. Munsell, were killed by an engine of the plaintiff in error on the western end of Main street, in the city of Norfolk, on the night of September 28, 1907, between seven and eight o'clock. The administrator of each of the decedents brought suit to recover damages in the Circuit Court of the city of Norfolk, alleging in each case that

the deceased came to her death, without fault on her part, as a result of the negligence of the defendant railroad company, and in each case there was a judgment for $10,000 in favor of the plaintiff, which we are asked to review and reverse.

The evidence being the same, the cases were heard together in this court.

In the case now under consideration, being that of Mrs. Holmes' administrator, there was a demurrer to the evidence, which was overruled by the circuit court and judgment entered in favor of the plaintiff for the damages ascertained by the jury. This action of the circuit court is assigned as error.

A brief statement of the physical conditions and special circumstances surrounding the point of the accident is essential to a clear understanding of the case.

The Merchants and Miners Transportation Company occupies an inclosed yard on the north side of west Main street, in the city of Norfolk, extending from the intersection of that street with Newton street westwardly toward the Bay Line wharf, a distance of about two hundred feet. Beginning at the intersection of Newton and Main streets, and going thence westwardly along the sidewalk on the north side of Main street, the first fifty-five feet of this yard front on Main street is occupied by a building. Proceeding further west, the yard is inclosed by a close fence, nearly seven feet high, in which there are three gates, each about seventeen feet wide. The railroad track of the defendant company forms a "Y" in Mathews street south of its intersection with Main street. The eastern prong of this "Y" crosses Main street and enters the yard through the first gate reached in going west along the north side of Main street, and the western prong of the "Y" crosses Main street and enters the yard through the third gate. It was at this third and last mentioned gate that the accident occurred.

The intersection of Mathews with Main street does not constitute a street crossing, Mathews street running only as far north as the south side of Main street, the north sidewalk of

Main street being continuous as far down as the wharf at its end.   An engine, therefore, coming out of a gate of the yard, passes immediately over the sidewalk on the north side of Main street.

The conditions pointed out show that the place at which the accident happened was one involving peculiar danger to persons going west along the north side of Main street.

A railroad company is bound to exercise care to avoid a collision when its road crosses a public highway, and the greater the danger the greater is the vigilance required.

Viewing the testimony from the standpoint of a demurrer to the evidence, it appears that from Newton street to the place of the accident, a distance of about one hundred and fifty feet, the railroad yard was so obstructed by buildings and fences that a pedestrian on the north side of Main street, going west to the wharf, could not see an engine being operated in the yard and approaching the street on the western prong of the "Y"; nor could the engineer in charge of the engine going out of the yard on the western prong of the "Y" see anyone approaching on the sidewalk from the east and going toward the wharf, there not being space enough between the cab window and the gate post on the eastern side of the gate for him to see a person so approaching.

It further appears that the plaintiff's intestate and her companion were strangers in the city of Norfolk, having never been there before the day they were killed, and only along Main street in the morning as they came from the wharf with friends who met them there.   In going west along Main street on their return to the wharf, between seven and eight o'clock at night of the same day, when it was very dark and "drizzly or misty," as they passed the gate through which the western prong of the "Y" ran, an engine of the defendant, with tender in front, moving at the rate of four miles an hour, emerged from the yard upon the sidewalk of the street, colliding with the intestate and her companion, instantly crushing the life out of both and

scattering their mutilated remains in different directions about the street.

It further appears that the Main street of Norfolk is a populous thoroughfare, and that at the time of the accident, on account of the Jamestown Exposition which was then in progress, it was more than usually traveled.  It further appears that the engine, with the tender in front, came from its place of concealment in the yard upon the sidewalk with no light burning, no bell ringing, preceded by no flagman, and without any watchman or warning of any kind to persons who might be passing along the street upon which it was about to enter.

If these facts are to be taken as true, and they must be on a demurrer to the evidence, the negligence of the defendant is beyond question.

It is contended on behalf of the defendant that the circuit court erred, "in admitting evidence of the lack of a flagman or watchman or man on the tender in the absence of proof of an ordinance requiring it."

Several of the counts of the declaration set out a city ordinance providing that whenever a locomotive engine is used within the city of Norfolk, a man shall be required to ride on the front of the locomotive or engine, or on the tender or car in advance of the train as the case may be.  And no such locomotive shall be allowed to cross west Main street until a flagman shall have been stationed at the intersection of the railroad with the street to display a flag by day and a light by night, etc., etc.

The theory of the defendant seems to be that, because there was no proof of the alleged ordinance requiring the precautions mentioned, the failure to take such precautions cannot be proven under the other counts of the declaration, as tending to show the defendant's negligence.  This position is not tenable.

"Independently of any statute or ordinance on the subject, when a train is backed over a crossing in a frequented street, a lookout must be employed; merely ringing a bell or sounding

the whistle on the engine, when the train is standing near with its rear to the crossing, is not sufficient warning to passers by of an intention to back the train, and that without other notice the company will be negligent." *Mark's Admr.* v. *Petersburg R. Co.,* 88 Va. 1, 3, 13 S. E. 299.

Whether or not it is negligence for the servants of a railroad company to run an engine backwards without stationing some one on the tender to signal its approach to a person who may be on the track, is a question which is controlled by the circumstances under which the engine is operated. Under some circumstances, the act is negligence as a matter of law, but in most cases it is a question of fact to be submitted to the jury. *So. Ry. Co.* v. *Daves,* 108 Va. 378, 61 S. E. 748.

If under the circumstances under which the engine in question was operated, it was negligence for the defendant company to have "no flagman or watchman or man on the tender," then the absence of such precautions may be proven to establish the defendant's negligence, without reference to the existence, pleading or proof of an ordinance on the subject; provided the allegations of the declaration are sufficient to justify the introduction of such evidence.

The counts of the declaration, other than those alleging the ordinance, set out in detail the special peculiarities of the locality and its environments and approaches, by reason of which passengers on the street were obstructed in their view of engines or trains while in the yard and about to move therefrom into Main street; the fifth count alleging that the tracks of the railroad were let into and flush with the pavement of the street, so that persons unfamiliar with the locality passing along the street in the night-time, in the exercise of ordinary care, would not discern their presence.

These, in brief, are the allegations of the circumstances under which the train was operated. These counts then proceed to charge the duties imposed upon the defendant company, under the special circumstances alleged, to be to exercise due and

reasonable care to keep watch and on the lookout so as to avoid running into and over and injuring persons passing, etc.; and the duty to exercise due and reasonable care to give warning of the approach of the train, by ringing a bell or by taking other means of notification so as to avoid, etc., etc.

These counts do not allege that any particular method or precaution, in exclusion of others, was incumbent upon the defendant in carrying out the duty imposed upon it, but only to exercise due and reasonable care to perform the duty of keeping watch and lookout so as to give warning of its approach, by ringing a bell or *by taking other means of notification.* These counts then allege that the defendant violated its duty and did not exercise due and reasonable care to keep watch and lookout, and to give warning of its approach by ringing a bell or *by taking other means of notification.*

To sustain the alleged violation of these duties, the plaintiff produced evidence that the view of the engineer from his cab was so obstructed that he could not keep watch and lookout; that no light was burning on the tender as it came out in front of the train; that no bell was ringing; that there was no watchman at the crossing; that there was no flagman to warn persons of the approach of the train, and that there was no person riding on the front of the tender which was in front of the engine. These are the ordinary and usual methods adopted for giving notice and warning to persons under the circumstances of this case, and proof that not one of them was employed tends to establish the allegation of the declaration that no warning was given.

The rules of pleading do not require the allegation, in detail, of all the methods of precaution that the defendant might or ought to have taken to give timely warning, under the circumstances here disclosed. The particular duty must be alleged, and its violation must be charged. The duty here is alleged to be "to exercise due and reasonable care to keep watch and lookout and to give warning of the engine's approach;" and the

violation of this duty is charged.   To sustain this charge evidence was admissible to show that there was no flagman, no watchman, no person riding on the front of the engine, that the engineer could not see from his cab, and that no light was burning and no bell ringing.   See *Ches. & Ohio Ry. Co.* v. *Hoffman, ante,* p. 44, 63 S. E. 432, 2 Va. App. 766.

The negligence of the defendant being established by competent testimony, we come to consider, whether the plaintiff's intestate was guilty of contributory negligence.

In this connection it is important to bear in mind the physical environments of the place where the accident occurred.   These have been sufficiently described and need not be repeated here. It was a dark, "drizzly" or misty night with the spot badly lighted.   The testimony shows that down to the very instant of the accident, when it was too late to escape, the decedent had no notice or warning of the danger that confronted her.

Only two witnesses testified to having seen the accident. One of these, W. Royster, introduced on behalf of the plaintiff, was returning from his work at the wharf, along the north side of Main street.   As he neared the point of the accident, he saw the deceased and her unfortunate companion on the sidewalk on the north side of Main street approaching him, and saw both ladies step on the track where it crosses the sidewalk, at the instant that the backing engine emerged from the yard to the sidewalk, and testifies that the engine had gotten possibly four or five feet out of the gate when it struck deceased in the side.   The testimony of this witness, that these ladies were on the sidewalk on the north side of the street when they were struck, is borne out by other testimony as to the physical evidences at the point of contact.   Two ladies' combs were found immediately after the accident, one in the middle of the sidewalk and one near the grating, just about where Royster saw them struck by the engine.   Some brains were also found on the sidewalk and at the grating mentioned.   The evidence further tends to show that at the point where this witness locates

these ladies when struck, there was a dragging, as if some one had been dragged over the surface there.

The testimony to which we have adverted clearly shows, that the deceased was struck while on the sidewalk, and just as she stepped on the track about four or five feet from the gate through which the engine emerged.

This evidence is uncontradicted, except by the testimony of R. L. Burgess, a witness introduced on behalf of the defendant company. This witness, who arrived at the moment, says that he was standing on the corner of Mathews and Main streets, on the south side of the latter, and that he saw two ladies, he supposes the two who were the victims of this accident, *standing* in the middle of Main street between the western prong of the "Y" and its eastern prong; that "they were talking there and one of them said to the other, 'Let's get across the track ahead of the engine,' and one caught her arm into the other's arm;" that he saw the engine coming, and they "sprung" for a run to go across the track, and one had an umbrella hoisted, "and I seen them fall across the track, and I turned my head and walked away. That is all I know about that part of it. I could not swear the engine killed them." This witness further says that the ladies did not run straight across the track, the shortest way, but went diagonally in a northwesterly direction towards the track; recklessly running. This would be, toward the approaching engine, which he says they were trying to avoid.

It is insisted on behalf of the defendant in error, that the remark, "Let's get across the track ahead of the engine," which is attributed to one of these ladies, shows that the deceased had actual knowledge of the proximity of the engine, and that the remark made is a fact not contradicted. This witness does not claim to have heard this remark at any other time or place than while the ladies mentioned were standing together in the middle of Main street. The evidence of the plaintiff shows that the victims of this accident were not, at the time the remark is said

to have been made, standing together in the middle of Main street, but that they were, at that time, on the northern sidewalk of the street, about the gate through which the engine that killed them passed; the only remark made by them being the exclamation as they were struck, "Oh, Lordy."

All that happened was in a brief moment, and it is hardly possible that these ladies could have been seen standing together in the middle of Main street, saying and doing there the things attributed to them, and at the same time to be where the evidence of the plaintiff places them.   The statement of the witness, Burgess, must be taken as a whole; and so considered it cannot be reconciled with the plaintiff's evidence.   We cannot sever the remark which he attributes to one of these ladies from its setting, and say that it establishes the contributory negligence of the plaintiff's intestate.   Without reference, however, to the rule which rejects the statement of this witness on a demurrer to the evidence, his whole testimony is inherently unsatisfactory, and a jury would have been well warranted in discrediting it, as they did in the companion case of *N. & W. Ry. Co.* v. *Munsell's Admr., post,* p. 421, 64 S. E. 50, which action on their part was approved by the judgment of the circuit court.

We are of opinion that the record does not sustain the charge that the deceased was guilty of contributory negligence.

Upon the whole case, we find no error in the judgment of the circuit court, and it is affirmed.

*Affirmed.*