# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## HIGGINS v. SOUTHERN RAILWAY COMPANY.

### November 12, 1914.

1. NEGLIGENCE—*Proof of.*—Negligence cannot be conclusively established by a state of facts upon which fair-minded men will differ.

2. DEMURRER TO EVIDENCE—*Facts Which Jury Might Have Found—Contributory Negligence.*—When the consideration of the evidence is taken from the jury by a demurrer to the evidence, if the jury could have found therefrom that the demurree was free from negligence proximately contributing to the causes of injury complained of, the court must so find.

3. DEMURRER TO EVIDENCE—*Lack of Contributory Negligence—What Jury Might Have Found—Case at Bar—Railroads—Grade Crossing.*—The negligence of the defendant proximately causing the injury complained of being conceded, the evidence was ample to warrant the jury in finding that the plaintiff's servant in charge of his wagon and team which were destroyed, was without negligence contributing to the cause of the injury, and hence the court must so find. In the case at bar,. plaintiff's horses were killed and his wagon destroyed by collision with one of defendant's trains at a grade crossing of a public road. The plaintiff's driver checked his team to a slow walk forty yards from the crossing and looked and listened for approaching trains but heard none, and then started to the crossing at a fast walk or little trot and collided with a passenger train running fifty miles or more an hour. It was admitted that no crossing signal was given by the defendant, and that it was negligent. Upon these and other facts the defendant, on its demurrer to the evidence, was held liable.

Error to a judgment of the Circuit Court of Orange county in an action of trespass on the case. Judgment for the defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Browning & Browning,* for the plaintiff in error.

*V. R. Shackelford* and *R. B. Tunstall,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

The plaintiff in this action, George W. Higgins, is the owner and occupant of a farm situated about six miles west of the town of Orange, on the line of the Southern Railway Company, and on the morning of July 3, 1911, sent his driver, one Humphrey Jones, an elderly negro man, accompanied by plaintiff's son, George W. Higgins, Jr., a lad of seventeen years, to the home of one Harrison Johnson, to bring Johnson's wife, plaintiff's cook, back to plaintiff's home. A farm wagon, drawn by two horses, was the conveyance put in use, the driver, Jones, and young Higgins occupying the front seat thereon. Johnson's house was situated on the road leading to the town of Orange, and in order to go there from plaintiff's farm and return it was necessary to cross the railway right of way and track at a certain crossing commonly known and spoken of as Kinzer's crossing. The trip to Johnson's past the crossing was made in safety, but on the return trip with the cook, her three children (one about eight years of age, one about seven and the other a baby) together with some furniture or household goods, occupying the wagon on the rear of the driver's seat, the wagon collided with a through fast north-bound passenger train of the defendant railway company, on the Kinzer crossing, resulting in the destruction of the wagon and the killing of the driver, Jones, the woman, her baby and both horses.

In this action the plaintiff seeks to recover of the defendant for the loss of his wagon, horses and harness, claimed to have been of the value of $750, and upon a trial of the cause, upon the plea of the defendant of the general issue, and after the plaintiff had introduced his evidence in chief and the defendant the testimony of two witnesses, the defendant interposed a demurrer to the evidence, in which demurrer the plaintiff joined, whereupon the jury assessed the damages of the plaintiff at $750, subject to the opinion of the court upon the demurrer to the evidence, and the court at its next term, in June, 1912, sustained the demurrer and entered its judgment for the defendant with costs, to which judgment this writ of error was awarded the plaintiff.

The negligence alleged in the declaration is, (1) that the defendant failed to blow its whistle for Kinzer's crossing, as required by the statute, until it was too late to do so effectually; (2) that it was also negligent because the bell on its engine was not ringing; and (3) that it was grossly negligent because it allowed trees, overhanging boughs and branches, telegraph poles and woods to so obscure its tracks at and beyond said crossing that any person approaching it from the east side thereof and traveling the public road or highway could not see a north-bound train approaching until such person reached the track, or so near thereto that a collision with the train could not be avoided.

The defendant offered no evidence at the trial to refute the evidence of the plaintiff, except that given by E. M. Averill and W. E. Clowes, who visited the scene of the accident after it had happened and took some photographic views showing, or purporting to show, the position of certain objects on the defendant's right of way with reference to the crossing, tending to contradict some of the evidence introduced for the plaintiff.

In its assignment of grounds for demurrer to the evidence, the defendant made the contention, first, that the plaintiff had failed to show by the evidence negligence on the part of the defendant, and, second, that the evidence of the plaintiff showed such negligence on the part of his agent and servant as bars a recovery in this action.

The defendant in the argument of the case here abandoned its first ground of demurrer and admits that the evidence does not sustain its contention as to that ground, so that the only question for consideration is whether or not the defendant's second ground of demurrer to the evidence is well taken, viz: "That the evidence of the plaintiff, Geo. W. Higgins, shows such negligence on his part as bars a recovery in this action."

The evidence discloses no unusual conditions which would take the case out of the control of the general doctrine with respect to the relative duties of the plaintiff and the defendant in an ordinary crossing case. It unmistakably appears—in fact, it is admitted—that the defendant on the occasion of this accident neither blew the whistle on its engine at the distance from the crossing prescribed and required by statute, nor was the bell thereon ringing as the crossing was approached, to warn persons traveling the public highway that a train was approaching the crossing, nor was there any other signal from the engine given except two short, sharp blasts of its whistle when too late to warn the driver of plaintiff's wagon of the approaching train in time for him to stop and keep off the crossing.

Plaintiff's wagon was an ordinary farm wagon, approaching the crossing from the east, traveling a public highway, and the evidence is that the train which collided with the wagon on the crossing was running at a rate of speed of "from 40 to 50 miles an hour, or maybe

more,'' and making no unusual noise. The only eye-witness to the accident in question who testifies in the case is George W. Higgins, Jr., who was sitting on the front seat of the wagon by the side of the driver and had equal opportunity with him to have seen the approaching train, could it have been seen in time to stop the team before it reached the railway track. He states that when in about forty yards of the crossing ''they checked up and the team walked, just moved in a slow walk, and then were started on at a fast walk or a little trot may-be,'' towards the crossing, not having heard or seen a train approaching, and that when he first saw the train it was about twenty-five or thirty yards up the track approaching the crossing so rapidly that he had just time enough before the collision to jump from the wagon to the ground at a point about four feet from the rail-way track; that the engine struck the wagon just in rear of its front wheel, knocking some of it thirty feet in the air and the Johnson woman thirty feet down the track. He testifies as to other conditions after the acci-dent going to show that the train was traveling at such a rate of speed that it was impossible for the wagon to have been kept off of the track after the train could have been seen by him, or the driver of the wagon sitting at his side. He also testifies as to obstructions of the view of the approaching train by trees and their branches on and along the right of way. As to these obstructions of the view from the wagon as it entered upon the defendant's right of way, the witness, Higgins, is corroborated by other witnesses for the plaintiff, who describe these ob-structions as being an oak tree standing entirely on the right of way at its intersection with the public road and forked into two branches about five feet above the ground where its diameter was about two feet, and from one of its branches a limb extended six feet out towards the

railway track, as did other branches from trees growing on the southern line of defendant's right of way for a lesser distance, all of which served to obstruct the view of the occupants of plaintiff's wagon of the train approaching the crossing from the south.

There is some variance in the statements of the witnesses as to what extent the obstructions of the view of the approaching train went, and just how far the horses drawing plaintiffs' wagon would' have been from the railway track when the driver of the wagon got to a point on the defendant's right of way at which he could have seen the approaching train, but several of the witnesses say that the horses must then have been "right on the track." G. W. Higgins, Jr., who, as remarked, was sitting beside the driver, Jones, testifies that the wagon was brought to almost a standstill when about forty yards from the crossing, in order to listen for trains, and hearing none he kept a lookout as the crossing was approached, but did not see the train in question until it was so close to the crossing on which the horses had already gotten that he barely had time to jump from the wagon to the ground at a point about four feet from the railway track before the wagon was struck by the engine. From the point at which the wagon had been brought to a standstill, in order that its driver and other occupants might listen for an approaching train, to the point at which the public road on which the wagon was traveling intersects with defendant's right of way, a small body of woods projected towards the railway track in such a manner as to totally obstruct its view to the south until the obstruction was passed and plaintiff's wagon was upon the defendant's right of way, and when the driver of the wagon reached the point of the intersection of the public road with defendant's right of way, his view of the railway track to the south was limited to

179 feet, and at that time his team was at least fifteen feet nearer the track; so that when he got where he could see a train approaching from the south, at a greater distance than the 179 feet, the team was, of course, nearer the track, or, as several witnesses testify, "right on the track."

Negligence cannot be conclusively established by a state of facts upon which fair-minded men will differ. *C. & O. Ry. Co.* v. *Shipp,* 111 Va. 381, 69 S. E. 925; *Boyd* v. *Southern Ry. Co.,* 115 Va. 11, 78 S. E. 548. It is a well established rule, that when the consideration of the evidence is taken from the jury by demurrer to the evidence, if the jury could have found therefrom that the demurree was free from negligence contributing proximately to the causes of his injury, the court must so find. *A. C. L. R. Co.* v. *Grubbs,* 113 Va. 214, 74 S. E. 144, and cases cited.

The negligence imputed to the plaintiff in the case at bar is, that the driver of the wagon, upon approaching the defendant's track at Kinzer's crossing, failed to keep a proper lookout for approaching trains. While some of the witnesses for the plaintiff who were differently situated from plaintiff's wagon and its occupants testify that they heard the "running" of the train which collided with the wagon, it by no means necessarily follows, as defendant contends, that the driver of the wagon should have heard it, whether it blew its whistle or not. The wagon, as remarked, was an ordinary farm wagon containing six occupants and "things" belonging to the cook, who was being moved, and doubtless made considerable noise as it moved along the road with the team at a walk or "a slow trot." Be that, however, as it may, the evidence, as we view it, was ample to have warranted the jury in finding not only that the defendant was guilty of negligence which was the proximate cause

of the accident in question, but that plaintiff's servant, in charge of his wagon and team which were destroyed, was without negligence contributing to the cause of the accident.

We are of opinion that the judgment of tne circuit court complained of has to be reversed, the demurrer of the defendant to the evidence overruled, and judgment entered here in favor of the plaintiff for the amount of damages assessed by the verdict of the jury, with interest from the date of the verdict, and costs.

*Reversed.*