## Wytheville.

## WILMOUTH'S ADM'R V. SOUTHERN RAILWAY COMPANY.

### June 12, 1919.

1. CROSSINGS—*Speed—Warning.*—A railroad company is guilty of culpable negligence in running a train at a high rate of speed, in excess of the speed limit allowed by a city ordinance, and without warning, over a highway crossing used by large numbers of persons.

2. CROSSINGS—*Contributory Negligence—Look and Listen.*—It is the duty of a traveler on foot over a highway crossing, passing in front of a moving railway train, to look and listen before going upon the railway track and to use reasonable care to do this at a point where such action may be reasonably effective.

3. CROSSINGS—*Contributory Negligence of Pedestrian—Case at Bar.* —Plaintiff's intestate while in possession of his faculties of sight and hearing, without any need of haste or excuse for his conduct other than carelessness, on a bright clear day, stepped upon a railway track at a crossing in front of a rapidly approaching passenger train when its engine was almost immediately upon him. By stopping at any point within a space of eight feet of the track and looking to the direction from which the train on that track was to be expected as was well known to him, or by looking in that direction as he walked, without stopping, the plaintiff's intestate could not have failed to have seen that the train was approaching and that it was almost upon him. He was on foot. There was nothing to have prevented his thereupon stopping and awaiting the passing of the passenger train before attempting to proceed.

   *Held:* That the contributory negligence of plaintiff's intestate was the proximate cause of his death and barred any recovery by the plaintiff.

4. CROSSINGS—*Contributory Negligence of Pedestrian—Case at Bar.* —Although when the circumstances are so unusual that the injured party could not reasonably have expected the approach of the train at the time he went upon the track, the failure to look is not regarded as contributory negligence *per se.* In the instant case there was an entire absence of such unusual cir-

cumstances. The crossing and its environment were all well known to the plaintiff's intestate. The passenger train was due and was to be expected at the time from the direction from which it came. The mere circumstance that a freight train was shortly previous thereto passing on the adjacent track was not unusual and was in no way calculated to induce the belief that the passenger train would not come in as usual on its separate track. There was nothing to throw the plaintiff's intestate off his guard save his negligent inattention to his surroundings.

5. CROSSINGS—*Proximate Cause—Case at Bar.*—The order of sequence of events does not furnish a reliable test of a proximate cause. The act which is nearest in point of time may not be the nearest in the line of causation. In the instant case it was not the excessive speed of the train, but the contributory negligence of plaintiff's intestate in stepping on the track without looking, which was the proximate cause of the accident.

6. CROSSINGS—*Last Clear Chance.*—Where a traveler was killed at a crossing and it appeared that when the engineer and brakeman had a clear view of the crossing the engine of the train was too close for it to have been stopped by any physical possibility before it reached the crossing, the doctrine of last clear chance has no application.

Error to a judgment of the Corporation Court of city of Danville in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

This is an action instituted by the plaintiff in error against the Southern Railway Company (the defendant in error) to recover damages for the killing of the plaintiff's intestate on a much-used street crossing of the railway company in the suburbs, but within the corporate limits of the city of Danville. The accident occurred on a Sunday, about ten o'clock in the forenoon, of a clear, bright day.

There was a trial by jury, and after evidence, both for plaintiff and defendant, was in, and after a view by the jury, there was a demurrer to the evidence by the railway company. There was a verdict of the jury in favor of the plaintiff, subject to the demurrer. The demurrer was sustained by the trial court and judgment was entered accord-

ingly in favor of the defendant railway company, and this action of the trial court furnishes the sole assignment of error.

Considering the evidence under the statutory rule on the subject, the following must be said to be the material facts of the case: The accident occurred as a northbound passenger train was approaching the station at Danville, running down a heavy grade, moving by its own momentum, "drifting," as it is technically called, and hence making but little noise, moving at a speed greatly in excess of the speed limit of the city ordinance, which was fifteen miles an hour —the speed being some twenty-five to thirty miles an hour. As the train approached the crossing, which was the place of the accident, no whistle signal for the station or crossing was blown, and there was no ringing of the bell. The crossing was that of Monmouth street, over the railroad at grade and practically at right angles with the railroad. The passenger train aforesaid was running on its scheduled time and was due to pass the crossing at the time of the accident. The plaintiff's intestate was well acquainted with this crossing and its dangers, was in possession of his faculties of sight and hearing, was sober and was traveling this highway on foot and approached the railway from the west going east. There are four tracks of the railway at this crossing, which in the order in which they are reached by a traveler going east along said highway will be designated as follows: The south pass track, the southbound main line, the northbound main line and the north-side track. As the plaintiff's intestate approached the south pass track there was a long freight train going south over the southbound main line moving at a moderate rate of speed up the heavy grade aforesaid. There was a yard engine some considerable distance to the rear going the same way on the same track which was approaching for the purpose of later on pushing the freight train and thus aiding it in ascending the heavy grade it was pulling. The testimony for

65

plaintiff shows that the plaintiff's intestate first stopped in the highway at a point a little west of the south pass track opposite a tool-house, which was located some seven or eight feet from the southern edge of the highway, and that there was a line of several box cars then standing on the south pass track to the south of and extending up to within a short distance of the crossing. At that point his view of the railway to the south was obstructed by such tool-house and box cars, as well as by the passing freight train. Other testimony for plaintiff shows that before the freight train had passed over the crossing the plaintiff's intestate was closer to it—that is, within five feet of it, as one of the witnesses for plaintiff testifies. This is explained by testimony of a witness for defendant who says that the plaintiff's intestate after first stopping, later moved up nearer to the passing freight train, to-wit: up to the side of it. There is no conflict, therefore, between the testimony for plaintiff and defendant on the subject of the position of the plaintiff's intestate at the moment just preceding the passing of the rear of the freight train over the crossing; and such testimony, when considered together, fixes that position at that time as immediately on the west side of the southbound main line track, waiting for the freight train to pass.

From the crossing, both main-line tracks extended southward in a straight line for 1,211 feet to a curve, where the railway turned into a deep cut and passed out of sight from the crossing.

There was no obstruction to prevent the plaintiff's intestate, standing in the position last named, from seeing the northbound passenger train, which killed him, approaching all the way as it came on towards the crossing from the mouth of the cut and curve aforesaid, 1,211 feet away, except the freight train, which was moving in the opposite direction, as aforesaid. From that position the tool-house and box cars aforesaid did not at all obstruct such view. As

the rear of the freight train passed and cleared the crossing it for a time obstructed the view of the plaintiff's intestate of some portion of the 1,211 feet of the northbound track to the south, but, as the freight train moved away, it, of course, must have opened more and more of that vista to the view of the plaintiff's intestate, if he had been looking that way.

A number of eye-witnesses of the accident, and of the movements of the plaintiff's intestate just preceding and at the moment of the accident, testify in the case. There is singularly little divergence in their testimony bearing on material points. There is testimony for the plaintiff to the effect that the plaintiff's intestate began to move in a moderate walk across the southbound track, not immediately, but almost immediately after the rear of the freight train had passed, and the greater number of the plaintiff's witnesses on this subject say that the intestate looked as he walked, first to the north and then to the south, from which latter direction the passenger train was approaching, and make no mention of his looking before or at the time he started across, except of his looking straight ahead. There is some testimony for the plaintiff, however, to the effect that the plaintiff's intestate first looked south and then to the north before he moved or at the moment of his first movement, and that then, after he began to move, he looked both ways as he walked. On demurrer we must take the latter to be the fact of the case.

The testimony for the plaintiff concurs, however, in the following material facts, namely: (a) that after the plaintiff's intestate was in the act of walking he was looking first to the north; (b) that when he next looked to the south he was upon the northbound main-line track and that he saw the northbound train, which was thereon and which killed him, the first time, and the moment that he first looked to the south after he began to move from his previous position,

as was apparent from his act of turning and leaping in the effort to escape it the moment he saw it; and that when he so looked the passenger-train engine was immediately upon him and struck him almost instantly, throwing him some sixty to seventy feet down the railway over on the north side-track, killing him instantly; and (c) that when the plaintiff's intestate stepped from the southbound track towards the northbound track looking away from the approaching train, it was in full view of him and was almost upon him, according to all of the testimony for plaintiff, being too close for the passenger train to have been stopped by any possibility so as not to strike the plaintiff's intestate if he came upon its track.

The testimony for the plaintiff shows that when the plaintiff's intestate looked south, before or at the instant of his starting across the southbound track, he did not wait sufficiently long for the rear of the freight train to recede a sufficient distance to clear his view of the railway track a reasonable distance in that direction before looking in such direction in order to render such looking reasonably effective, for, if he had, the physical facts testified to by plaintiff's own witnesses demonstrate that the plaintiff would have seen the passenger train approaching before he started to move; and all the testimony for plaintiff agrees in the fact that he did not then discover such train, but first discovered it after he got on the northbound track.

The testimony also shows, without conflict, that there was a distance of eight feet two inches between the eastern rail of the southbound and the western rail of the northbound main-line tracks. Allowing for the overhang of the passenger engine, and for the rear of the freight train having passed some little distance from the crossing by the time the plaintiff's intestate had made three or four steps and was on the southbound track and about to step from it towards the northbound tracks, there must have been a space

of some eight feet between such intestate and danger, in which, if he had stopped and looked to the south or had looked to the south as he walked, he could not have avoided seeing the passenger train approaching and that it was almost upon him.  He was in no peril and under no apparent necessity or urgent need of haste, so far as the evidence discloses.  He did not stop to so look or even to so look as he walked as to make his looking in any degree effective, but stepped on the track almost immediately in front of the approaching train without seeing it until he was about midway between the rails of the track it was on.

As shown by the testimony for the plaintiff, the engine of the passenger train going north reached the crossing almost as soon as the rear of the freight train going south cleared the crossing at its rear.  As one of plaintiff's witnesses says of the plaintiff's intestate:  "If he had crossed immediately it" (the rear of the freight train) "passed, he would have been hit" (by the passenger-train engine). (This, of course, assumes that this would have occurred if the plaintiff's intestate had continued moving only as fast as he was at first moving, namely, in a moderate walk.) This witness estimates that the passenger-train engine was "twenty-five yards" (or seventy-five feet) away from the crossing when the plaintiff's intestate had stepped between the rails of the track it was on.  The witness for plaintiff who puts the passenger-train engine farthest away from the crossing at this time estimates it at ninety feet.  None of the witnesses, however, could give exact distance, they merely estimate them and they are not very definite as to the distance the passenger-train engine was away when the plaintiff's intestate first entered the eight-foot space aforesaid.  But all of plaintiff's witnesses who saw the tragedy say, in substance, that the passenger-train engine was very close to the plaintiff's intestate when he first entered upon the aforesaid eight-foot space, and it is manifest from

such testimony that such engine was then too close for it to have appeared to the plaintiff's intestate as reasonably possible for him to have safely crossed the track in front of it if he had looked towards it before going on the track.

*Daniel Grinnan, R. L. Montague, Harry Wooding, Jr.,* and *B. H. Custer,* for the plaintiff in error.

*Withers, Brown & Leigh,* for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The turning points of the case before us lie within a very narrow compass, and, under the rules on the subject, too firmly established to be changed except by statute, the contributory negligence of the plaintiff's intestate was the proximate cause of his death and bars any recovery by the plaintiff. And there is no statute in force with us, State or Federal, which changes such common law rule as it affects others than employees of a railroad company.

[1] It is true that in accordance with the evidence as we must regard it on demurrer, the defendant railway company was guilty of culpable negligence in running the train which killed the plaintiff's intestate at the high rate of speed, in excess of the speed limit allowed by the city ordinance, and without warning, over the highway crossing used by large numbers of persons. *So. Ry. Co.* v. *Abee's Adm'r,* 124 Va. 379, 98 S. E. 31; *Grand Trunk Ry. Co.* v. *Ives,* 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; *N. & W. Ry. Co.* v. *Holmes,* 109 Va. 407, 64 S. E. 46; *N. & W. Ry. Co.* v. *Munsell,* 109 Va. 417, 64 S. E. 50; *Danskin* v. *Penn. R. Co.,* 76 N. J. Law, 660, 72 Atl. 32, 22 L. R. A. (N. S.) 232, 237-8, and note; *Continental Imp. Co.* v. *Stead,* 95 U. S. 161, 24 L. Ed. 403.

[2] But the case involves a traveler over a highway

crossing passing in front of a moving steam railway train, and a traveler on foot, under circumstances, which are set forth in the statement preceding this opinion, under which, as is well settled by the authorities, it was his duty to look and listen before going upon the railway track and to use reasonable care to do this at a point where such action might have been reasonably effective.[*] *Springs* v. *Va. Ry. & P. Co.,* 117 Va. 826, 86 S. E. 65; *Wash., etc., Ry. Co.* v. *Lacey,* 94 Va. 460, 26 S. E. 834; *So. Ry.* v. *Jones,* 106 Va. 412, 56 S. E. 155; *U. S. Spruce Lumber Co.* v. *Shumate,* 118 Va. 471, 87 S. E. 723; *Wash., etc., Ry. Co.* v. *Zell's Adm'r,* 118 Va. 755, 88 S. E. 309.

[3] It is apparent from the facts of this case, set forth above, that the plaintiff's intestate disregarded the duty just mentioned and that, while in possession of his faculties of sight and hearing, without any need of haste or excuse for his conduct other than carelessness, on a bright, clear day, stepped upon a railway track in front of a rapidly approaching passenger train when its engine was almost immediately upon him. By stopping at any point within a space of eight feet of the track and looking in the direction from which the train on that track was to be expected, as was well known to him, or by looking in that direction as he walked, without stopping, the plaintiff's intestate could not have failed to have seen that the train was approaching and that it was almost upon him. He was on foot. There was nothing to have prevented his thereupon stopping and awaiting the passing of the passenger train before attempting to proceed. It is not a case where a train is so far away when the crossing is attempted that a reasonably prudent traveler would have made the attempt relying, if the train could not be seen on its being looked for, upon its giving proper warnings of its approach, or, if seen and it was not apparently moving excessively fast, relying upon the train not exceeding its lawful speed. In the instant case the train was so

close at hand when the crossing in front of it was attempted that its visible presence superseded the need of any other warning to all travelers upon the highway in the reasonable exercise of their faculties of sight, if not of hearing. The preceding negligence of the defendant railroad company aforesaid was therefore immaterial. And the conduct of the plaintiff's intestate in stepping upon the track in front of such visible danger, almost immediately upon him, must, under all of the authorities, be regarded as negligence *per se,* which was the proximate cause of his death. Thompson on Neg., sections 1666, 1667, 1672.

[4]    There are exceptions to the general rule of negligence *per se* just referred to, which exist, as stated by the authorities, "when the circumstances are so unusual that the injured party could not reasonably have expected the approach of the train at the time he went upon the track." *Scott* v. *St. Louis, etc., R. Co.,* 79 Ark. 137, 95 S. W. 490, 116 Am. St. Rep. 67, 9 Am. & Eng. Anno. Cas. 212, 214, and note pp. 216-17. When such circumstances exist, the failure to look is not regarded as contributory negligence *per se,* and the case is held to be one for the jury on that issue. But in the case before us there was an entire absence of any such unusual circumstances. The crossing and its environment were all well known to the plaintiff's intestate. The passenger train was due and was to be expected at the time from the direction from which it came. The mere circumstances that a freight train was shortly previous thereto passing on the adjacent track was not unusual and was in no way calculated to induce the belief that the passenger train would not come in as usual on its separate track. There was nothing to throw the plaintiff's intestate off his guard save his negligent inattention to his surroundings.

In both of the cases of *Hubbard* v. *Boston, etc., R. Co.,* 162 Mass. 132, 38 N. E. 366, and *N. Y. S., etc., R. Co.* v. *Moore,* 105 Fed. 725, 45 C. C. A. 21, especially urged upon

our attention in argument for the plaintiff the traveler over the highway crossing of the railroad was driving and the obstruction to the view was such that the horse or horses would have had to have been driven practically upon the track before the driver could have stopped and, without alighting, could have looked along the track for any reasonable distance. In view of the fright of the animals that would have resulted from an approaching train, this situation rendered the "stop, look and listen" rule inapplicable in such cases.

To the same effect are the United States Supreme Court cases above cited, also relied on by the plaintiff. (144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; and 95 U. S. 161, 24 L. Ed. 403).

To the same effect also are the following Virginia cases cited and relied on by the plaintiff. *So. Ry. Co.* v. *Bryant,* 95 Va. 212, 28 S. E. 183; *Higgins* v. *So. Ry. Co.,* 116 Va. 890, 83 S. E. 380.

As to the other Virginia cases cited and relied on by plaintiff, namely, those of *Southern Ry. Co.* v. *Abee's Adm'r, supra,* 124 Va. 379, 98 S. E. 31; *N. & W. Ry. Co.* v. *Holmes, supra,* 109 Va. 407, 64 S. E. 46; and *N. & W. Ry. Co.* v. *Munsell, supra,* 109 Va. 417, 64 S. E. 50, which involve travelers on foot and which hold that the traveler was not guilty of contributory negligence in going on the crossing in front of a steam railroad train near by: They are all cases where the accident occurred in the night-time and in other respects differ from the case before us. In the instant case the danger was imminent and apparent to a traveler at all alert to the perils of his position and making reasonable use of his faculty of sight, whereas in the cases just mentioned the situation was otherwise.

The case of *Danskin* v. *Penn. R. Co., supra,* 76 N. J. Law, 660, 72 Atl. 32, 22 L. R. A. (N. S.) 232, and the note thereto, involve the consideration of when it is negligence for a

66

railroad company not to have gates or a watchman at a crossing. The declaration in the instant case does not allege such negligence as the proximate cause of the accident, although it does allege the absence of a watchman at the crossing in question as a circumstance which enhanced the degree of care the railway company should have exercised as to the speed of its passenger train and as to giving signals. But the railway company may be regarded as culpably negligent in these matters and yet that did not excuse the conduct of the plaintiff's intestate aforesaid under the circumstances which surrounded him.

[5] It is urged, however, in argument for the plaintiff that the fact that the plaintiff's intestate was struck by the far side of the engine and thrown to the opposite side of the track over which he was crossing when struck by the train shows that he had almost succeeded in crossing before it arrived and that if the train had not been moving at an unlawful rate of speed he would have escaped, and, hence, the rate of speed is predicated as the proximate cause of the accident. The evidence discloses, however, that the manner in which the plaintiff's intestate sprang in his effort to escape when he saw the train almost upon him caused him to be struck by the far side of the engine and thrown, as aforesaid. And although it may be true that if the train had been moving only at a lawful speed the plaintiff's intestate might have crossed the track before he was struck, yet under the facts of this case that would have been but a chance happening. Neither the speed of the train as it appeared to the plaintiff's intestate nor the expectation by him that it would be within the lawful speed in fact induced him to attempt the crossing in front of it. He attempted the crossing in culpable ignorance of the proximity of the train. A supposed speed of the train was not a *causa causans*—it was not a "causing cause"—in the instant case; which character of cause alone is a proximate cause as

known to the law. It can no more be regarded as the proximate cause of the failure of the plaintiff's intestate to clear the track in advance of the train than was the time and the speed of his own movement. If he had started across immediately behind the passing freight train and had run rapidly, instead of walking, he would doubtless have crossed the northbound track ahead of the passenger train. That conduct of omission may be as well said to have been the proximate cause of the accident as the speed of the passenger train. Neither can be said to have been such proximate cause in contemplation of law. The order of sequence of events does not furnish a reliable test of a proximate cause. The act which is nearest in point of time may not be the nearest in the line of causation.

There was in truth, in contemplation of law, an intervening cause in the instant case between the negligent speed of the passenger train and the accident, and that was the contributory negligence of the plaintiff's intestate aforesaid. And the law regards such an intervening act as the proximate cause of an injury suffered by the actor. 1 Thompson on Neg., sec. 64. If the act which constituted such negligence had been such that under the circumstances it was such as a reasonably prudent person would have committed, and hence ought not to have been imputed to the plaintiff's intestate as a fault, then indeed such act would not be regarded as an intervening proximate cause, because it would have been such an act as the railroad company might reasonably have foreseen as likely to have occurred or as reasonably possible of occurrence under the circumstances without fault of the actor, and hence the injurious result, or some injurious result such as did happen, might have been reasonably foreseen by the railroad company as likely to occur, or as reasonably possible of occurrence, without fault of any other person, from its own wrongful act in running its train in an unlawful speed. And such foresee-

able nature of the result, when regarded in such a light as that just mentioned, is, after all, the most reliable and perhaps the only practical test which the finite mind can apply to the solution of that most difficult of legal questions— what is the proximate cause of a given result. 1 Thompson on Neg., sections 48-49. But one is not required by the law to anticipate and foresee that another will be guilty of contributory negligence; nor is there any duty imposed by law upon any one to foresee and guard another against the results of such negligence of his own until after such negligence occurs and the position of the negligent person became known or would become known if a reasonable lookout were kept. Then, indeed, but not until then, the humane doctrine of the last clear chance becomes applicable in favor of the negligent person. And in the instant case the law did not require that the railroad company should foresee and anticipate that a traveler over the crossing, such as the plaintiff's intestate, with a clear, eight-foot space before reaching the danger zone of the track, in which he could by the exercise of ordinary care look for approaching trains before putting himself in danger, would go upon the track, as he did, almost immediately in front of the train without looking in that direction. On the other hand, we must consider that the plaintiff's intestate should have foreseen that the accident which occurred was likely to result, or was reasonably possible of occurrence, from just such conduct as that of which he was guilty under the circumstances which surrounded him. Hence, we cannot escape the conclusion that it was not the excessive speed of the train, but the contributory negligence of the plaintiff's intestate, which was the proximate cause of the accident.

[6] The case before us does not admit of the application of the last clear chance doctrine upon the testimony of any of the witnesses for plaintiff or upon any evidence in the case. It is urged for plaintiff that if the plaintiff's intes-

tate, from the place in which he stood just west of the south-bound track, after the rear of the freight train passed him, could have seen along the northbound track for 1,211 feet and could then have seen the passenger train approaching for that distance, it follows that the fireman or engineman on the passenger-train engine could and, in the exercise of reasonable lookout, should have seen the plaintiff's intes-tate standing there, and his jeopardy as he moved and walked in evident unconsciousness of his peril toward the northbound track, and that the airbrakes should and could have been applied in the exercise of reasonable diligence so as to have stopped the passenger train before its engine reached the crossing.   But this argument rests upon the as-sumption that the passenger train was a sufficient distance away when the view of the plaintiff's intestate of and from it was freed from obstruction by the receding freight train to allow such airbrake application to be performed with the result mentioned.   Such assumption, as we have seen, finds no support in the evidence.   That evidence, even for the plaintiff, all concurs in establishing the fact, set forth in the statement of facts aforesaid preceding this opinion, that when such clearance of view occurred, the engine of the passenger train was too close to the crossing for it to have stopped by any physical possibility before it reached the crossing.

For the foregoing reasons we find no error in the action of the trial court in sustaining the demurrer to the evidence and the judgment under review must be affirmed.

*Affirmed.*

BURKS, J., concurs in the result.