## Staunton.

## SOUTHERN RAILWAY CO. v. ADKINS.

September 11, 1916.

Absent, Sims, J. *

1. DEMURRER TO EVIDENCE—*Case at Bar—Negligence—Contributory Negligence.*—The jury in the case at bar would have been well warranted in finding from the evidence that the employees of the defendant in charge of the engine which inflicted the injury complained of, by the exercise of due care and diligence, could have discovered the plaintiff's peril and prevented injury to him, but negligently failed to do so; and whether or not the plaintiff himself was guilty of negligence proximately contributing to his injury was a question upon which, under the evidence, fair-minded men might well have entertained different opinions. Where this is the case, upon a demurrer to the evidence by the defendant, the court should enter judgment for the plaintiff.

Error to a judgment of the Circuit Court of Pittsylvania county in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*William Leigh,* for the plaintiff in error.

*Geo. T. Rison,* for the defendant in error.

CARDWELL, P., delivered the opinion of the court.

This is an action to recover damages for personal injuries suffered by defendant in error, plaintiff below,

---

* Case was submitted before Judge Sims took his seat.

caused, as is alleged, by the negligence of the defend-
ant railway company.

Upon the trial of the cause, after all the evidence,
both for the plaintiff and defendant had been intro-
duced, the defendant demurred to the evidence and
filed its grounds of demurrer, in which demurrer the
plaintiff joined, and the jury having assessed the dam-
ages to which plaintiff was entitled at $2,500, subject
to the opinion of the court on the demurrer, was dis-
charged, and the court then took time to consider as
to its judgment on the demurrer till the March term
of the court, 1915, when, the court being of opinion
that the evidence was sufficient in law to maintain the
issue joined on the part of the plaintiff, overruled the
demurrer and entered judgment against the defend-
ant for the amount of damages assessed to the plain-
tiff by the jury, to which judgment this writ of error
was awarded the defendant.

The sole error assigned is to the ruling of the trial
court overruling defendant's demurrer to the evidence.

The accident to plaintiff, for which he sues, occurred
about 9:30 o'clock a. m., May 15, 1914, at Chatham
station, at a point where a public road known as
"Hickey's road" crosses the tracks of the defendant
company. At this point the railroad tracks run prac-
tically north and south, and Hickey's road crosses the
tracks running east and west, almost at right angles.
On the east side of the railroad and the south side of
the road is situated the storehouse of Barker, Terry &
Neal, a little removed from the Hickey road. The
defendant's station house at Chatham is located on
the east side of the railroad and a little north of the
Hickey road. On the west of the railroad and to the
south of the Hickey road is located Patterson's store,
and on the north of the Hickey road and to the west

of the railroad is the warehouse of the Virginia-Carolina Chemical Co.  Just south of this crossing a side-track leaves the main line of railway and runs on the west side of the main line across the Hickey road to a guano house owned by Mr. Patterson, and on the east side of the main line there is a pass track of some extent which runs by the store of Barker, Terry & Neal, and by the station at Chatham.

On the morning of the accident to plaintiff, he had come to the storehouse of Barker, Terry & Neal in a one-horse carryall, and had driven his carryall to the guano house of Barker, Terry & Neal and loaded on it four sacks of fertilizer.  Barker, Terry & Neal have built from their storehouse a platform running parallel with the tracks of the railroad company, and extending out until it reached very nearly to the edge of the Hickey road, if not up to it; and after taking on his four sacks of fertilizer, the plaintiff drove his carryall to the side of this platform and there loaded on it a bale of hay.  While this was going on, an engine attached to a freight train of the defendant, moving north, was doing some shifting at Chatham.  It first brought up a car of fertilizer and pushed it in on Patterson's siding, or "kicked" it in, as one of the witnesses expressed it, and then took up an empty freight car and pushed it up beyond the crossing in a northerly direction and coupled that car to a car standing on the main line.  The plaintiff, after he had loaded his bale of hay, drove to the end of Barker, Terry & Neal's platform, and just as he reached that point, the engine, pushing the car, as just mentioned, was approaching the crossing, and plaintiff stopped his horse and carryall at the end of the platform in the Hickey road and waited for the engine and car to pass.  At this point he was from twenty to twenty-two feet from

defendant's main track at the point of this accident, and he states that this engine pushing a car moved fifty or probably one hundred yards beyond the crossing and then stopped, while other witnesses fix the distance at from forty-five to fifty yards. Plaintiff states that as soon as the engine stopped, he began to move towards the crossing with intent to pass over it, and that the engine was then standing still. One witness says that he thought that the engine was going away from the crossing, and others say that it was "in a dead halt," when plaintiff started over the crossing. He had but a short distance to go and had gone so far as to be in a position from which he could not turn back or do anything but go forward, when he discovered that the engine had started back, running not at a moderate rate of speed, but at a speed increasing until it became from ten to fifteen miles per hour when the crossing was reached. The witnesses vary somewhat in their statements as to what point the plaintiff had reached when the engine started back, but all practically corroborate the statement of the plaintiff that he had either gotten upon the main track with his wagon, or his horse's neck had reached it before he discovered that the engine was approaching. Some of the witnesses say that he had gotten between the side-track and the main track when the engine started towards the crossing, which tracks were only five or six feet apart, so that his horse had only to make a step to get on the main track when the engine started. The plaintiff and two of his witnesses say emphatically that the engine was standing still when he started to cross, and that after he had started over he had proceeded so far before the engine started that it was impossible for him either to turn aside or retreat.

Even in these circumstances it clearly appears that the accident to plaintiff would not have happened had this engine, running with the tender in front, come back to the crossing at a moderate rate of speed, for it is in proof that the outer edge of one of the rear wheels of his carryall alone was struck by the engine's tender, causing the vehicle to overturn, throwing plaintiff to the ground with one or more bags of the fertilizer in the vehicle on him.

The evidence shows beyond question that this crossing is a very dangerous one; that the public road—the Hickey road—at that point is much frequented; and that these facts were well known to the defendant and its employees, including the engineer and fireman in charge of the engine which inflicted the injury to the plaintiff. Had these employees on the engine looked towards the crossing as they came back to it, they, as the evidence plainly shows, could have seen plaintiff traveling towards the crossing in time to have avoided injury to him, and they could have avoided injuring him simply by reducing the speed of the engine instead of increasing it; but they took no precautions whatever in approaching this dangerous crossing. No whistle was blown, and it is not even claimed that either the engineman or the fireman on the engine kept a lookout for travelers over the crossing, so that the jury would have been well warranted in a finding from the evidence that the employees of the defendant in charge of the engine, by the exercise of due care and diligence, could have discovered plaintiff's peril and prevented injury to him, but they negligently failed to do it.

Upon the issue of the plaintiff's contributory negligence, so much relied on by the defendant, the main contention, in effect, is that the plaintiff failed to keep

a proper lookout for the return of the engine which had passed the crossing near which he was standing with intention to cross over, and that his failure to keep such lookout was negligence contributing to his injury.

As observed, plaintiff saw the engine when he started across the railway tracks, but it was standing still, giving no indication of its coming back towards the crossing. Witness Neal thought it was going away from the crossing, instead of coming back to it, and both he and other witnesses say it was "in a dead halt" when plaintiff started over the crossing. He had, as we have seen, almost succeeded in crossing safely, for the hind wheels of his wagon were on the western or outer rail when the tender struck it, and if the engine had slowed up in the slightest degree, instead of increasing its speed to from ten to fifteen miles per hour, he would have gone on his way unhurt.

Negligence cannot, as a matter of law, be predicated on a state of facts upon which fair-minded men might differ. The question presented here is whether a man of ordinary prudence and care for his own safety would have undertaken to cross the defendant's railway tracks under the circumstances and conditions which confronted the plaintiff at the time he started over the crossing. That fair-minded men might, upon the whole evidence in the case, reasonably have differed at least, in opinion upon that question, is quite clear to us, and, therefore, we are unable to affirm that the evidence makes out a case of contributory negligence so plain as to have warranted the court in taking it away from the jury. *Southern Ry. Co.* v. *Aldridge,* 101 Va. 142, 43 S. E. 333; *Perkins* v. *Southern Ry. Co.,* 117 Va. 351, 85 S. E. 401.

In the last cited case many authorities in point here are collated, and the opinion of the court by Whittle,

J., quotes from the opinion in *Bass* v.. *Norfolk Ry. & L. Co.*, 100 Va. 1, 8, 40 S. E. 100, 102, the following as the settled rule in this court, viz.: "Whether or not the plaintiff's intestate, under all the facts and circumstances of the case, was guilty of contributory negligence is a question about which reasonably fair-minded men might differ. The inferences to be drawn from the evidence must be certain and incontrovertible, or they cannot be decided by the court. It was, therefore, a question for the jury . . . And since the jury might have found for the plaintiff on the question of contributory negligence of the plaintiff's intestate, on the defendant's demurrer to the evidence, the court must so find."

Viewed in the light of the authorities cited, we are of opinion that the judgment of the circuit court for the plaintiff, upon the defendant's demurrer to the evidence, is right and has to be affirmed.

*Affirmed.*