## Wytheville.

## SEABOARD AIR LINE RAILWAY V. ABERNATHY.

June 14, 1917.

Absent, Burks, J.

1. CROSSINGS—*Degree of Care Required of Traveler.*—The degree of care, which a traveler approaching a railway crossing is required to exercise, is ordinary care.

2. CROSSINGS—*Instructions—Contributory Negligence of Plaintiff.*— In an action for injuries sustained at a crossing, the court instructed that the jury could not find the plaintiff guilty of contributory negligence "if they believe from the evidence that in approaching said track and proceeding over said crossing, the . plaintiff exercised such precaution for his safety as a person of ordinary prudence would have exercised under the circumstances disclosed by the evidence. Whether or not it was a lack of ordinary care, as defined in these instructions, on the part of the plaintiff, under the facts and circumstances disclosed by the evidence, not to have stopped before crossing the track on which he received the injury complained of, is a question of fact for the jury." While in many cases of accidents at crossings where the traveler's contributory negligence is manifest, such an instruction would be objectionable because misleading, it was, nevertheless, particularly applicable in this case, in which, in twelve instructions, the defendant company had presented to the jury its theory that plaintiff had been guilty of such contributory negligence as to bar his action.

3. NEGLIGENCE—*Questions of Law and Fact.*—Negligence only becomes a question of law to be taken from the jury when the facts are such that fair-minded men can only draw one inference therefrom. If fair-minded men, from the proofs submitted, may honestly differ as to the negligence charged, the question is not one of law but of fact to be determined by the jury under proper instructions from the court. In such case, if the jury might have found for the plaintiff, on the defendant's demurrer to the evidence, the court must so find.

4. CROSSINGS—*Degree of Care Required of Traveler.*—It is the imperative duty of a traveler approaching a railway crossing

to look and listen where looking and listening would be effective, and to stop if necessary in order to avoid a collision; and in many cases such an instruction as that set out in the second headnote might mislead the jury and induce them to ignore or disregard this rule. But in the instant case it was proper to instruct the jury as to the degree of care which the plaintiff should exercise in approaching this crossing at which his view was so obstructed that he could not see from a place of safety, while the absence of noise from the detached cars rolling down grade made his listening ineffective, and where there was no safe place in which to stop in order to see, hear and take the necessary precautions.

5. CROSSINGS—*Degree of Care Required of Traveler—"Ordinary Care."*—Although the giving of the instruction set out in headnote 2 was not reversible error, a better definition of ordinary care is that it means such care and caution as an ordinarily prudent and reasonable person would have exercised under the same circumstances, conditions and surroundings.

6. CROSSINGS—*Contributory Negligence of Traveler—Stopping.*— It is not contributory negligence for the driver of an automobile not to stop upon the track between stationary cars, in an opening made in a train for the purpose of permitting travelers to cross that track, to look and listen for cars or trains approaching on another track on the further side of the opening. There can hardly be a more dangerous place for an automobile to stop than on a railroad track between cars recently uncoupled for the purpose of opening the highway.

7. DAMAGES—*Crossing—Automobile.*—In an action for damages sustained in a collision between plaintiff's Ford automobile and cars of defendant company at a crossing, the evidence was that the machine was "wrecked," and that all that was left of it was the engine and that had not been removed from the scene of the accident at the time of the trial. As the value of an engine of such an automobile, in such a condition, may be said to be almost negligible, and there was no evidence of its salvage value offered, it was not reversible error to instruct the jury that if they should find for the plaintiff, in estimating his damages, they should take into consideration the value of the automobile which was "destroyed" at the time of the collision.

8. CROSSINGS—*New Trial—Negligence—Case at Bar.*—In the instant case there was gross negligence on the part of the defendant company's servants in sending four cars down an incline without any efficient control. Just such an accident to some traveler upon the highway as happened might have been

anticipated from such a movement, and the question of the plaintiff's contributory negligence was one about which fair-minded men might honestly differ, and was, therefore, properly submitted to the jury. Where the negligence of defendant railroad is clearly established, and the question of the contributory negligence of the plaintiff is properly submitted to the jury, the verdict of the jury will not be set aside as contrary to the law and the evidence.

Error to a judgment of the Circuit Court of Brunswick county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*E. Randolph Williams, Henry W. Anderson* and *Andrew D. Christian,* for the plaintiff in error.

*Buford & Peterson,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

C. P. Abernathy was seriously injured by the collision of a Ford runabout automobile, driven by himself, with four cars which were coupled together but detached from the engine of the Seaboard Air Line Railway (hereinafter called the Company) while he was attempting to cross the track at Alberta which connects the main lines of the Virginian Railway and the Seaboard, which intersect there.

He recovered a judgment in the trial court, and the company is here complaining.

The pertinent facts are these: For the purpose of transferring cars between the two lines of railway at Alberta there is a connection track running east and west about a quarter of a mile in length, and as the Virginian crosses over the Seaboard main line, this connection track has a slight grade, the fall being from west to east. Parallel with

this connection track, on the south side thereof, is an additional track, known as the "house" track, used for the placing of cars for unloading at the freight station. Between the north rail of the house track and the south rail of the connection track the distance is eight feet, six inches. On the north side of the connection track there is an additional track known as the mill track. There is a road, with which Abernathy was familiar which turns almost due north and passes at right angles over the three tracks referred to. On the west side of this road and south of the house track, is a small warehouse about twenty feet away, and on the east side thereof south of and abutting on the house track, there is a freight depot about fifty feet away.

An engine of the Company was engaged in the movement and placing of cars on the house and connection tracks. The train on the house track had been cut at the road crossing, leaving a space of from twelve to fifteen feet between the cars, so as not to obstruct the highway, and the engine had taken six other cars for the purpose of placing them. For some unexplained reason a brakeman, without the knowledge of the conductor, had uncoupled four of these six cars, detaching them from the engine, and they were moving down the grade of the connection track from west to east at a speed of five or six miles an hour. Abernathy testified that his view of the track was absolutely obstructed by the cars on the house track. The gondola which struck the automobile was lower than the cars standing on the house track and for that reason could not be seen by Abernathy until he emerged from between the cars on the house track. The four detached cars, consisting of two gondolas and two box cars, the gondolas being in front, were making little if any noise during this down-grade movement on the connection track. The conductor testified that he did not know that the cars were detached from the engine until the automobile was struck; that he gave the signal for the engineer

to stop, and as there was no response he turned to see what the trouble was and then he ran and set a hand brake which stopped the cars.

The plaintiff testified that when he got to the crossing it seemed to him that the opening between the standing cars was as narrow as he had ever seen it up to that time; that he looked and listened all he could without stopping the automobile; that he was going as slow as he could without stopping, it seemed to him; that he looked to see if he could see a train, and then looked over the cars to see if he could see any smoke; that when he got to the connection track the car was within six feet of him; that there was no chance at all for him to get out of the way; that when he came up he was running as slow as he could to be moving; that he looked to see if he could see any smoke or hear the sound of any cars and heard nothing and saw nothing; that when he got to the connection track he looked and immediately he was struck and knocked down; that the cars were right on him and it didn't appear to be a second from the time he got on the track before he was struck; and that he saw the car as soon as there was any possible chance of seeing it.

1. The first assignment of error is that the court erred in giving instructions "C" and "D," asked for by the plaintiff.

(a) Instruction "C" reads as follows: "The court instructs the jury that they cannot find the plaintiff guilty of contributory negligence if they believe from the evidence that in approaching said track and proceeding over said crossing, the plaintiff exercised such precaution for his safety as a person of ordinary prudence would have exercised under the circumstances disclosed by the evidence. Whether or not it was a lack of ordinary care, as defined in these instructions, on the part of the plaintiff, under the facts and circumstances disclosed by the evidence, not to

23

have stopped before crossing the track on which he received the injury complained of, is a question of fact for the jury."

It should not be necessary to cite authority for the proposition that the degree of care, which a traveler approaching a railway crossing is required to exercise, is ordinary care, and while in many cases of accidents at crossings where the traveler's contributory negligence is manifest, such an instruction would be objectionable because misleading, it was, nevertheless, particularly applicable in this case, in which, in twelve instructions, the company had presented to the jury its theory that Abernathy had been guilty of such contributory negligence as to bar his action.

The rule is stated in *City of Norfolk* v. *Anthony,* 117 Va. 777, 86 S. E. 68, to be this: "Negligence only becomes a question of law to be taken from the jury when the facts are such that fair-minded men can only draw one inference therefrom. If fair-minded men, from the proofs submitted, may honestly differ as to the negligence charged, the question is not one of law but of fact to be determined by the jury under proper instructions from the court."

In such a case, if the jury might have found for the plaintiff on the defendant's demurrer to the evidence, the court must so find. *Saunders* v. *Southern Ry. Co.,* 117 Va. 396, 84 S. E. 650; *Perkins* v. *Southern Ry. Co.,* 117 Va. 351, 85 S. E. 401; *Southern Ry Co.* v. *Jones,* 118 Va. 689, 88 S. E. 178.

There are doubtless many instances of injuries at crossings where the giving of such an instruction as is complained of here might mislead the jury and induce them to ignore or disregard the well established rule of law imposing upon travelers approaching railway crossings the imperative duty to look and listen where looking and listening would be effective, and to stop if necessary in order to avoid a collision. In a case like this, however, it was proper to instruct the jury as to the degree of care which the plaintiff

should exercise in approaching this crossing at which his view was so obstructed that he could not see from a place of safety, while the absence of noise from the detached cars rolling down grade made his listening ineffective, and where there was no safe place in which to stop in order to see, hear and take the necessary precautions.

The better form of defining ordinary care in such cases may be found in instruction 6, which was given in *Southern Railway Company* v. *Vaughan,* 118 Va. 696, 697, 88 S. E. 306, L. R. A. 1916 E, 1222, reading thus:

"The court further instructs the jury that ordinary care, as expressed in the foregoing instructions, as applied to each, the decedent and the defendant, means such care and caution as an ordinarily prudent and reasonable person would have exercised under the same circumstances, conditions and surroundings." This instruction, in an opinion by Keith, P., was regarded as unobjectionable in view of the facts of that case.

The giving of the instruction here complained of, in view of the evidence in this case, presents no reversible error, though, as above indicated, we think the instruction quoted from *Southern Ry. Co.* v. *Vaughan, supra,* contains a proper and preferable statement of the law.

In this case counsel for the company appear to base their charge of contributory negligence imputable to Abernathy on his failure to stop upon the house track between the stationary cars in the opening made in the train for the purpose of permitting travelers to cross that track, for this was the only place at which he could possibly have stopped and had any view of the detached cars approaching on the connection track. Doubtless, if he had stopped upon that house track for the purpose of making such an investigation and been injured because these cars were brought together suddenly, a demurrer to the evidence would have been sustained upon the ground that there can hardly be a more dan-

gerous place for an automobile to stop than on a railroad track between cars recently uncoupled for the purpose of opening the highway.

There were only eight feet, six inches, between the inside rails of the two tracks, and by the time the driver of the automobile had cleared the overhang of the cars upon the house track, the front of his machine must have been upon the connection track, or so close thereto as to expose him to extreme danger. If, however, he had stopped his car before getting upon the house track and gone forward to observe the condition of things upon the connection track and found the crossing apparently safe, by the time he had again started his automobile and attempted to cross, a dangerous situation might have developed—indeed, an accident similar to this very accident might have occurred. Under these circumstances, it seems to be peculiarly appropriate that the question as to whether or not the plaintiff was guilty of contributory negligence should have been submitted to the jury, and certainly it would have been error for the lower court to have told the jury as a matter of law that the plaintiff should, within the space of less than eight feet, six inches, have been able, while his car was slowly moving, to look in both directions and stop in time to have avoided the accident.

(b) It is further complained that instruction "D" was erroneous because it told the jury that, if they should find for the plaintiff, in estimating his damages they should take into consideration the value of the automobile which was "destroyed" at the time of the collision.

The evidence is that the machine was "wrecked," and that all that was left of it was the engine and that had not been removed from the scene of the accident at the time of the trial. As the value of an engine of such an automobile, in such a condition, may be said to be almost negligible, and there was no evidence of its salvage value offered, we do not regard this as reversible error.

2. The second assignment of error is that the court refused to set aside the verdict as contrary to the law and the evidence, and because of misdirection of the jury.

From what we have said heretofore, it is apparent that, under the facts above stated, there was gross negligence on the part of the company's servants in sending four cars down an incline without any efficient control. Just such an accident to some traveler upon the highway as happened might have been anticipated from such a movement, and the question of the plaintiff's contributory negligence was one about which fair-minded men might honestly differ, and was, therefore, properly submitted to the jury.

The case is governed by that line of cases involving injuries at crossings where the negligence of the defendant was clearly established, and in which the question as to whether or not the contributory negligence of the plaintiff should bar his recovery, was submitted to the jury, for which many authorities might be cited, among which are: *Demaine* v. *Washington, &c. Co.*, 2 Va. Dec. 499, 27 S. E. 437; *Norfolk & W. Ry. Co.* v. *Burge*, 84 Va. 63, 4 S. E. 21; *Nichols* v. *W. O. W. & R. Co.*, 83 Va. 99, 5 S. E. 171, 5 Am. St. Rep. 257; *Norfolk & W. R. Co.* v. *Holmes*, 109 Va. 407, 64 S. E. 46; *Norfolk & W. Ry. Co.* v. *Munsell*, 109 Va. 417, 64 S. E. 50; *Higgins* v. *Southern Ry. Co.*, 116 Va. 890, 83 S. E. 380; *Perkins* v. *Southern Ry. Co., supra; Southern Ry. Co.* v. *Vaughan, supra; Southern Ry. Co.* v. *Adkins*, 119 Va. 746, 89 S. E. 847.

There is no error in the judgment.

*Affirmed.*