## 🕮ichmond.

## N. JANNEY PURCELL V. THE WASHINGTON AND OLD DO-
MINION RAILWAY, INC.

### March 16, 1922.

### Absent, West, J.

1. CROSSINGS—*Negligence of Railroad—Failure to Give Warnings.* —In an action for personal injuries sustained by plaintiff in a collision at a railroad crossing, a count of the declaration which alleged that defendant railroad negligently failed to sound a bell, blow a whistle, or give any warning of its approach or keep a careful lookout for the crossing, showed actionable negligence on the part of the defendant.

2. CROSSINGS—*Contributory Negligence—Failure to Listen—Case at Bar.*—In an action for personal injuries sustained in a collision between plaintiff's buggy and an engine of defendant railroad at a crossing, a count of the declaration alleged that plaintiff slowed down and listened for the train at a point 150 yards from the crossing, that being the last point at which plaintiff could have seen the train before his horse was upon the track, and then drove straight ahead without further precaution. The count also alleged that it would have been futile for the plaintiff to get out of the vehicle and go ahead to look for the train.

   *Held:* That the count showed contributory negligence on the part of the plaintiff. Although he could not effectively look after passing that point, he ought to have continued to listen.

3. DECLARATION—*Counts—One Count Aided by Another.*—In order that the allegations of one count of a declaration may be aided by the allegations of another, they must be referred to or made part of the first count.

4. CROSSINGS—*Last Clear Chance—Declaration.*—In an action for personal injuries sustained in a collision at a crossing, a count in plaintiff's declaration alleged that after defendant discovered, or by the use of ordinary care could have discovered, plaintiff's peril and avoided the accident, it failed to stop or

control its train and thereby collided with and destroyed plaintiff's buggy and seriously injured plaintiff.

*Held:* That this count of the declaration made a good case for recovery on the doctrine of the last clear chance.

5. CROSSINGS—*Contributory Negligence—Agreement between Town and Railroad that Railroad would Run Slowly Over Crossing—Knowledge of Plaintiff.*—Where there was no allegation that plaintiff knew or relied upon an alleged agreement between a town and defendant railroad, that the railroad would operate its trains over the crossing where the accident occurred at four miles per hour, the agreement did not relieve the plaintiff in any degree of his duty to look out for trains at the crossing. However, such agreement may have affected the primary liability of the defendant.

6. CROSSINGS—*Last Clear Chance—Plaintiff's Declaration Showing Train could not have been Stopped in Time.*—In an action for injuries sustained in a collision between plaintiff's buggy and a train of defendant railroad at a crossing, a count in plaintiff's declaration showed that the train was running too fast to stop, and, hence, however much this rapid rate of speed might have affected the alleged negligence of the defendant in its breach of an agreement with the town to run slowly over the crossing, there was no last clear chance to save the plaintiff.

7. CROSSINGS—*Contributory Negligence—Stop, Look and Listen—Duty to Stop—Case at Bar.*—A count in plaintiff's declaration which alleged that he drove slowly and listened intently for a train as he approached the crossing where the accident occurred was sufficient to take the case to the jury upon the question of plaintiff's contributory negligence. By adequate reference to another count, the count in question showed that it would have been futile to attempt to look for the train by leaving the buggy, and the plaintiff was entitled to have a jury say whether he exercised due diligence by driving slowly and listening intently, even though he did not actually *stop* to listen as he approached the crossing.

8. CROSSINGS—*Stop, Look and Listen—General Rule.*—A railroad track is itself a signal of danger, and imposes upon one approaching it the duty to look and listen, but not the duty to *stop,* or to get out of the vehicle, in order to look and listen.

9. PLEADING—*Declaration—Vague and General Allegations—Demurrer.*—Where the allegations of a count in a declaration are too vague and general to state a good cause of action, there is no error in sustaining a demurrer to it.

Error to a judgment of the Circuit Court of Loudoun county in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Cecil Connor* and *Charles F. Harrison,* for the plaintiff in error.

*Wilton J. Lambert, C. Vernon Ford, Wilson M. Farr* and *R. H. Yeatman,* for the defendant in error.

KELLY, P., delivered the opinion of the court.

This is a writ of error to a final judgment sustaining a demurrer to the plaintiff's declaration and dismissing the case. The action was brought by N. Janney Purcell against the Washington and Old Dominion Railway, Inc. There was an original and a first amended declaration, to each of which a demurrer was sustained with leave to amend. We are concerned here only with the declaration as amended the second time.

The material facts alleged in the first count were, in substance, as follows: The defendant owns and operates a railroad through the town of Purcellville, wherein it maintains a station. About sixty feet east of the station its tracks intersect the public road, making what is commonly known as a "railway crossing." The plaintiff was traveling on the public road in a southerly direction towards this crossing in a one-horse buggy. His position on the buggy seat was ten feet from the horse's head. As he approached the crossing his view was obstructed by a cut and certain structures owned by the defendant, and there was no point nearer than 150 yards therefrom at which he could see a train coming from the west until he reached a point five

feet from the track. At the former point, 150 yards (called 150 *feet* in this particular connection in the declaration, but shown by the context and conceded to mean 150 yards) from the crossing, plaintiff "slowed up" and looked and listened attentively for any approaching train. Seeing and hearing no train, and believing that it was safe to himself and his horse to proceed, he moved on towards and upon the crossing. The horse was on the track before he saw, or could see, the defendant's train, which was then running towards him from the west. The horse was visible to the operator of the train for a material length of time before the train was visible to the plaintiff. The plaintiff could not add to his safety by getting out of the buggy and walking ahead to look for the train, because the time required to return and get back in the buggy would be sufficient to permit a train invisible when he was out at the crossing to arrive there before he could, after having made such observation, drive across the track. The defendant negligently failed to sound a bell, blow a whistle, or give any warning of its approach or keep a careful lookout for the crossing, and after it discovered, or by the use of ordinary care could have discovered, the plaintiff's peril and avoided the accident (the horse having passed at slow speed entirely over the track before the collision occurred), failed to stop or control its train, and thereby collided with and destroyed the buggy and seriously injured the plaintiff.

[1-3] This count shows actionable negligence on the part of the defendant in failing to give warnings for the crossing, and it also shows contributory negligence on the part of the plaintiff. According to his averments, he did not slow down and listen for the train nearer to the track than 150 yards therefrom, and at that point made up his mind that it was safe to drive straight ahead, and did drive straight ahead and on to the crossing without further precaution. The facts alleged with reference to the futility of getting

out of the buggy and going ahead to look did not relieve him of the obligation to listen carefully before proceeding, and this he appears not to have done after passing the point 150 yards from the track. He could not, it is true, effectively look after leaving that point, but he ought to have continued to listen. It may be·that he would not have heard the train if he had listened, but, in the absence of allegations to the contrary, the natural presumption is that he would have heard it, and it was his duty to overcome that presumption. He did overcome the presumption by his allegations in count three, but they are not referred to or in any way made a part of this count. The court will not presume that a party's pleadings are less favorable to him than the facts will warrant.

[4] But this first count of the declaration did make a good case for recovery on the doctrine of the last clear chance. If its allegations are true, the operator of the train, in the exercise of ordinary care, could have discovered the plaintiff's peril in time to avoid the accident, and his failure to do so was a supervening negligence which rendered the defendant liable. The case of *U. S. Spruce Lumber Co.* v. *Shumate,* 118 Va. 471, 87 S. E. 723, is relied upon in this connection by the defendant to support the contention that the doctrine of last clear chance cannot be applied here, but the case cited is not available for that purpose. The court refused to apply the doctrine in the *Shumate Case* because the declaration contained no averments showing that the defendant could by due care have avoided the injury. The averments there were merely to the effect that the defendant did not use ordinary care to discover the plaintiff's danger, and the court held that the declaration ought to have gone further and alleged that by the exercise of such care the danger could have been both discovered and prevented. In the instant case the allegations clearly show that by the use of ordinary care the operator

of the train could have discovered the plaintiff's danger and avoided the accident. It was, therefore, error to sustain the demurrer to the first count.

[5, 6] The second count, after describing the situation at the crossing by reference to the first count, and further stating that the plaintiff "looked and listened intently for a train of the defendant at any and every point where the said defendant's trains would have been visible to him before he entered on the said crossing, and hearing none and seeing none" (the only such point of vision being, as shown above, 150 yards from the track), made the following additional averments:

"That said crossing is a very dangerous crossing, as is well known to the said defendant, and that theretofore the town of Purcellville, realizing the dangerous character of said crossing, had undertaken to exercise the rights it possessed to require the said defendant to either place gates across the highway at said crossing or to flag their said trains across the same, to the end that the traveling public might be safe in crossing the tracks of the said defendant at this point. To this end, negotiations were had between the town of Purcellville on the one hand, and the said railroad on the other, and in order to prevent the said town of Purcellville from exercising its rights and requiring the said gates or the flagging of said trains at said crossing, the said defendant represented that it would thereafter run its said trains over said crossing at a rate of four miles per hour; relying on this representation, the said town of Purcellville did not require the gates, nor the flagging, but accepted the promise and representation of the said defendant that it would operate its said train over said crossing at four miles per hour, which understanding was given on January 10, 1918, in writing, and which understanding and promise was in force and operation at the time of the accident herein complained of."

And this second count further avers that the defendant was running its train on that occasion at a rate far in excess of four miles an hour, and could, if it had slowed down to the latter rate for the crossing, have easily stopped in time to avoid the accident.

There was no allegation that the plaintiff knew of or relied upon the alleged agreement with the town of Purcellville, and the agreement, therefore, did not relieve the plaintiff in any degree of his duty to look out for trains at the crossing, however much such agreement may have affected the primary liability of the defendant. The count, therefore, like the first, shows contributory negligence on the part of the plaintiff; and further shows that the train was running too fast to stop, and hence, however much this rapid rate of speed may have affected the alleged negligence of the defendant, there was no last clear chance to save the plaintiff.

The third count describes the situation at the crossing by reference to the first count, and in addition thereto avers (1) that the motive power of the train was electricity; (2) that the plaintiff as he approached the crossing "drove along at a slow rate of speed," and "listened intently for a train of the defendant approaching said crossing;" and (3) that the defendant, realizing the dangerous character of the crossing, had adopted and notified the town of Purcellville of a rule to reduce the speed of its trains in the town to eight miles an hour and over the crossing to four miles an hour, and that the observance of this rule would have enabled the operator to stop in time to avoid the accident, whereas on this occasion it ran its train over the crossing "far in excess of four or even ten miles an hour," knocking and dragging the plaintiff a distance of sixty feet.

It is further stated in this third count that the defendant, by adopting and notifying the town of the rule afore-

said, "lulled the town and the public in that vicinity into the belief that it would conform to said rule;" but there is no averment that the plaintiff knew of or relied upon the rule.

[7] This count, in our opinion, does not show contributory negligence on the part of the plaintiff as a matter of law. The allegation that he drove slowly and listened intently for a train as he approached the crossing was sufficient to take the case to the jury upon the question of his contributory negligence. By adequate reference to the first count, this one shows that it would have been futile to attempt to look for the train by leaving the buggy, and the plaintiff was entitled to have a jury say whether he exercised due diligence by driving slowly and listening intently, even though he did not actually stop to listen as he approached the crossing.

[8] In *Southern R. Co.* v. *Aldridge,* 101 Va. 142, 146, 43 S. E. 333, 334, Judge Harrison, delivering the opinion, said: "This court has never decided that, as a matter of law, it was the duty of a person approaching a crossing of a railroad to *stop,* look and listen for an approaching train. It has been said in numerous cases that the railroad track itself was a signal of danger, and imposed upon one approaching it the duty to look and listen, but it has in no case been held that it was his duty to stop in order to look and listen, or that it was his duty when in a vehicle to get out in order to look and listen."

In *Southern R. Co.* v. *Bryant,* 95 Va. 212, 221, 28 S. E. 183, 185, Judge Riely, in delivering the opinion, said: "It cannot be inferred as a matter of law, under the circumstnces disclosed by the record, that because Bryant drove upon the track without stopping, he did not listen. The instinct of self-preservation forbids the imputation of recklessness to any one. Where a traveler is killed at a railroad station, and the negligence of the railroad is established, in the

absence of evidence to the contrary, the presumption is, though perhaps slight, that the traveler did his duty in approaching the crossing." In the instant case, the fact is admitted by the demurrer that the plaintiff continued to look and listen intently.

In the case of *Wilmouth* v. *Southern R. Co.*, 125 Va. 511, 521, 99 S. E. 665, Judge Sims, reviewing numerous cases with reference to the "stop, look and listen" rule, shows clearly that the rule could not be made to apply to the situation here.

It is insisted that the case of *U. S. Spruce Lumber Co.* v. *Shumate, supra,* is in conflict with the view here indicated, but there is in fact no real conflict between that case and the other Virginia cases last above cited. The gist of the decision in the *Shumate Case,* in so far as that decision is here involved, is that when a traveler on a highway undertakes to cross a railroad track he must look and listen at such time and place as will make looking and listening effective, and that if his allegations or proof show that he looked and listened where looking and listening would do no good, he makes a case of negligence on his own part, provided his failure to more effectively look and listen is "unexplained." (118 Va., p. 476, 87 S. E. 723.)

In this case, the averments of the count now under consideration contain an adequate and reasonable explanation of his conduct, and we are of opinion that the question of his negligence in failing to stop should be determined by a jury.

The demurrer to the third count of the declaration should have been overruled, and the action of the trial court in that respect was erroneous; but it is to be observed that the count does not, as plaintiff contends, present a case for the application of the last clear chance. Under its allegations, the train was running too fast to have allowed any

appreciable interval for the prevention of the accident after the discovery of the peril.

[9] The fourth and last count of the declaration undertakes to state a case of liability on account of the defendant's failure to minimize the seriousness of the plaintiff's injuries and the extent of his damage, even though the collision itself could not have been avoided. With respect to this count in the declaration, we deem it sufficient to say that its allegations are too vague and general to state a good cause of action, and we find no error in the judgment of the lower court with respect thereto.

For the reasons stated, we are of opinion that the court was right in sustaining the demurrer to the declaration as to counts two and four, but that counts one and three are good, and that as to them the demurrer should have been overruled. We will accordingly enter an order in this court to that effect, and remand the cause for further proceedings.

*Reversed.*