# Wytheville.

## John Barton Payne, Director General of Railroads (Virginian Railroad), v. C. M. Brown.

### June 15, 1922.

#### Absent, West, J.

1. Crossings—*Contributory Negligence—Obstructed Crossing—Duty of Driver of Truck—Sending Forward Boy to See Whether Track was Obstructed—Case at Bar.*—In an action for damage to a motor truck struck by a train of defendant railroad at a public crossing, the view of the track upon which the truck was struck was obstructed by coal cars upon the first two tracks of the railroad at the crossing. The driver could have safely stopped his truck, certainly just before he reached the first track, and perhaps between the first and second tracks, and have sent forward the colored boy who was accompanying him to give him a signal. It did not appear, however, that the driver might not have supposed that he would be able to hear a train or see an engine or its smoke over the top of the coal cars, as he proceeded at a slow speed across the first two tracks looking and listening for a train. According to plaintiff's testimony no bell was sounded or whistle blown for the crossing.

   *Held:* That a verdict for plaintiff would not be disturbed as against the evidence.

2. Crossings—*Contributory Negligence—Duty of Driver of Truck Approaching Crossing.*—The duty of the driver of an automobile truck approaching a crossing is to exercise ordinary care. But ordinary care depends upon the circumstances of the case, and must be commensurate with the danger.

3. Negligence—*Ordinary Care—Question for Jury.*—What is ordinary care in a given case is always a question to be determined by the jury, if the facts are such that fair-minded men might reasonably differ upon the question.

4. Crossings—*Contributory Negligence—Duty of Driver of Truck Approaching Obstructed Crossing—Case at Bar.*—Notwithstanding the fact that the jury found that the driver of an automobile truck approaching a crossing, the first two tracks of which were obstructed by coal cars, could not hear a train or see any part of the engine, or the smoke from the engine, upon the third track, it is not unreasonable

to assume that persons undertaking to cross in an automobile might in advance of the actual experiment have supposed that if there was a train on the other side of the obstructing coal cars, they would be able to see it or hear it before reaching the unobstructed track. And where a driver of a truck expected that a train, if near, would give some signals of its approach, it cannot be said that he was bound to know, in the exercise of due care, that the slowing down, running cautiously, and looking and listening would be ineffective.

5. CROSSINGS—*Contributory Negligence—Duty of Traveler Approaching Crossing.*—When a traveler on a highway undertakes to cross a railroad track, he must look and listen at such time and place as will make looking and listening effective, and, if his allegations or proof show that he looked and listened where looking and listening would do no good, he makes a case of negligence on his own part, provided his failure to more effectively look and listen is unexplained.

6. CROSSINGS—*Contributory Negligence—Duty of Traveler Approaching Crossing—Questions of Law and Fact.*—Where the view of the track is obstructed, and the railroad company has failed to give notice of the approach of its train to a crossing, and a person in attempting to go across the track, not being able to see the train on account of obstructions, and being obliged to act upon his judgment at the time of crossing, is injured, the propriety of his going upon the track under such circumstances is not a question of law to be decided by the court, but a matter of fact to be determined by the jury.

7. CROSSINGS—*Contributory Negligence—Driver of Automobile Truck Accompanied by Boy.*—Where, at a crossing at which plaintiff's automobile truck was struck by a train, defendant railroad knew even better than the driver of the truck that the crossing was usually blocked, kept no flagman there, and probably assumed as the driver did that the crossing required no such precaution, the fact that the driver of the truck was accompanied by a boy who could have gone forward and piloted him safely across, does not *per se* establish contributory negligence of the driver.

8. CROSSINGS—*Contributory Negligence—Duty to Stop—Explanation of Failure to Stop—Case at Bar.*—Cases may and do arise in which the courts properly hold that undertaking to cross a railroad track without stopping to look and listen is negligence which, as a matter of law, bars a recovery, and that such conduct is, if unexplained, contributory negligence *per se*. In the case at bar, however, an explanation was offered. The driver did not stop, but reduced his speed to four miles an hour, looked and listened as effectively as he could have done if he had stopped, and perhaps acted as an ordinarily prudent man would have done in attempting to cross the tracks.

9. CROSSINGS—*Instructions—Peremptory Instructions—Partial View of the Case.*—In an action for damages to a truck at a crossing, whatever the driver might have thought of the situation before he made the experiment of crossing, the evidence showed beyond dispute

that he could not see the train. An instruction directing a verdict in defendant's favor if plaintiff's driver could not see the train from the truck, was properly overruled, because it ignored and excluded from the jury any consideration of the driver's caution in running slowly, listening for a train, and depending upon signals, which it was defendant's duty to give.

10. CONTRIBUTORY NEGLIGENCE—*Grounds of Defense—Statement in Writing of Reliance Upon the Contributory Negligence of the Plaintiff as a Defense—Section 6092 of the Code of 1919.*—Section 6092 of the Code of 1919, unlike the original act (Acts 1916, p. 506), makes the filing of the statement in writing by the defendant in any action of tort, independent of a motion by the plaintiff or a direction by the court, a condition precedent to the defense of contributory negligence, except as disclosed by the plaintiff's testimony.

11. CONTRIBUTORY NEGLIGENCE—*Grounds of Defense—Statement in Writing of Reliance Upon the Contributory Negligence of the Plaintiff as a Defense—Waiver of Right to Rely on Statute.*—Plaintiff does not waive his right to rely on section 6092 of the Code of 1919, providing that if the defendant intends to rely upon the contributory negligence of plaintiff he shall so state in writing before the trial begins, giving the particulars thereof, by failing to object to certain evidence introduced by the defendant tending to show contributory negligence upon the part of plaintiff, where there was nothing in the evidence in question to put the plaintiff on notice that it was intended primarily to support a claim that the plaintiff was guilty of contributory negligence.

12. CONTRIBUTORY NEGLIGENCE—*Grounds of Defense—Statement in Writing of Reliance Upon the Contributory Negligence of the Plaintiff as a Defense—Section 6092 of the Code of 1919.*—Section 6092 of the Code of 1919, providing that if defendant in any action of tort intends to rely upon the contributory negligence of the plaintiff as a defense to the action, he shall so state in writing before the trial begins, giving the particulars thereof, is mandatory.

13. CONTRIBUTORY NEGLIGENCE—*Grounds of Defense—Statement in Writing of Reliance Upon the Contributory Negligence of the Plaintiff as a Defense—Section 6092 of the Code of 1919—Case at Bar.*—In the instant case it was insisted on behalf of defendant that the plaintiff's alleged contributory negligence was, for the first time, disclosed to the defendant by the plaintiff's testimony, and that nothing in the statute (section 6092 of the Code of 1919) prohibited defendant from following up the defense thus disclosed by a development of all the facts with reference thereto.

*Held:* That this argument, while plausible, was not sound; that in case of serious surprise to the defendant in the plaintiff's evidence the ends of justice could be met in the trial court by a continuance to allow an original compliance with the statute, or by an amendment of the statement of grounds of defense already filed, with or without a continuance.

Error to a judgment of the Circuit Court of Greensville county, in an action of trespass on the case. Judgment for plaintiff.    Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Walter C. Plunkett, Williams, Loyall & Tunstall* and *Hall, Wingfield & Apperson,* for the plaintiff in error.

*John N. Sebrell, Jr.,* and *E. Peyton Turner,* for the defendant in error.

KELLY, P., delivered the opinion of the court.

This is an action by C. M. Brown against the Director General of Railroads, operating the Virginian Railroad, for damage to a motor truck, caused by a collision with one of the defendant's freight trains at a public crossing.    There was a verdict and judgment for the plaintiff, and the defendant assigns error.

The accident occurred in the daytime just west of Jarrett, an unincorporated village.    At the crossing, and for some distance in each direction therefrom, the defendant maintained four parallel tracks, which, counting from north to south, were respectively designated as the "Team Track," the "Storage Track," the "Pass Track," and the "Main Track."    When the collision occurred the truck was moving south on the public road, and the train was moving west on the pass track.    In each direction from the crossing for a long distance the tracks are perfectly straight, but at the time of the accident the view of the pass track and the main track each way, for one coming south

15

over the crossing, was entirely cut off by long lines of coal cars which the defendant had stored or placed on the team track and the storage track. These lines of cars were separated only by the width of the crossing—that is to say, they extended right up to the crossing on each side. The space between the team track and the storage track is about twenty-five or thirty feet, and between the storage track and the pass track about eight feet. The train, which had come from the east and had run in on the pass track, stopped at Jarrett station, east of the crossing, long enough (just how long does not appear) to load and unload some local freight, and, having dropped the caboose on à siding, was proceeding west on the pass track for the purpose of placing some cars on one of the other tracks at a point west of the crossing. The train at that time was composed of some fifteen or twenty cars and had attained a speed of twelve or fifteen miles an hour, and the engine was within not less than seventy nor more than one hundred feet of the crossing when the truck passed the end of the stationary coal cars on the storage track and thus reached a point where the truck driver and the engineer could see each other. Until this moment the engineer could not see the truck, and, according to the plaintiff's witnesses, the truck driver could not see the engine, although there is evidence for the defendant (evidently rejected by the jury) tending to show that the smoke stack and top of the cab was in the line of the driver's vision over the top of the coal cars. The driver of the truck was moving so slowly that, within the few feet available to him after seeing the engine, he was able to stop the truck before its front wheels quite reached the north trail of the pass track, and he attempted to back away, but his reverse gear did not

work promptly, and he failed in this attempt. Whether the engineer did all he should have done to avoid the collision is a question on which there is some conflict in the evidence. However this may be, the engine struck the bumper or the front springs on the truck, pushed or knocked it along the track a distance of something like twelve feet, and at that distance beyond the crossing came to a full stop. The truck was seriously damaged, but the driver and a colored boy who was riding with him both escaped without injury, and the truck itself was able to leave the scene under its own power.

The testimony of the driver and the boy with him was to the effect that they were familiar with the crossing; that the conditions prevailing that day with reference to the coal cars on the tracks were usual at that point; that they did not stop, but slowed up, looked and listened for a train, saw and heard none, and proceeded at slow speed (about four miles an hour) across the first two tracks, continuing to look and listen until they came in view of the engine, as above stated; that the truck was running smoothly and making very little noise; that the colored boy was standing up in an effort to get a better view over the top of the coal cars; that no bell was sounded and no whistle was blown for the crossing.

The employes in charge of the train say, on the other hand, that they blew the whistle and rang the bell in full compliance with their duty in that respect, and that the engine was making steam, throwing out smoke and making considerable noise. This, however, like the evidence that the smoke stack and cab were visible over the top of the cars, was in conflict with the plaintiff's evidence and reasonable inferences therefrom, was rejected by the jury, and cannot be con-

sidered by us, except in so far as it may be material to certain questions of law arising upon the instructions.

[1–4] The first ground upon which we are asked to reverse the judgment is that the court erred in refusing to set aside the verdict as contrary to the law and the evidence.

In support of this contention it is urged that the plaintiff's driver, in view of his familiarity with the crossing and its obstructed condition, did not take due precaution for his safe passage over it.

The question is a close one. We do not say that if we were sitting as a jury and passing upon the facts of this case as they appear in type, we would find for the plaintiff. The driver could have safely stopped his truck, certainly, just before he reached the team track, and perhaps between the latter and the storage track, and sent the colored boy forward to give him a signal. But would that course have been dictated by ordinary care, or would it only have been exacted by the highest degree of care?

The duty of the driver was to exercise ordinary care. This is elementary. But ordinary care depends upon the circumstances of the case, and must be commensurate with the danger. *Wash. & O. D. Ry. Co.* v. *Zell*, 118 Va. 755, 759; 88 S. E. 309; *Jeffress* v. *Va. Ry. & P. Co.*, 127 Va. 694, 713, 104 S. E. 393. This was a dangerous crossing and the driver knew it.

It must be remembered, however, that what is ordinary care in a given case is always a question to be determined by the jury, if the facts are such that fairminded men might reasonably differ upon the question. What would a man of ordinary prudence have done under the circumstances of this case? The driver and his companion knew in advance, and were bound to observe at the time, that the view at the

crossing was obstructed. But it does not clearly appear that they might not have supposed that they would be able to hear a train or see an engine or its smoke over the top of the cars. Indeed, witnesses for the defendant testified that this very thing could have been done at that time, and the defendant relied upon that evidence in the defense of this action. To be sure the jury found, as a fact, that the driver and his companion could not hear the train or see any part of the engine, or the smoke from the engine, but it does not seem unreasonable to assume that persons undertaking to cross in an automobile might, in advance of the actual experiment, have supposed that if there was a train on the other side of the coal cars, they would be able to see it or hear it before reaching one of the unobstructed tracks. Can we say, in view of the evidence as a whole, that the plaintiff's driver was bound to know, in the exercise of due care, that the looking and listening which he was doing would be ineffective? We think not. He slowed down, ran cautiously and continued to look and listen. He had reason to expect that the train, if near, would give some signals of its approach. If the latter had been done by the defendant's employes, the driver would have been warned, and the accident, in all probability, would have been avoided. This, at least, is one view which reasonable men might take of the situation.

The case of *U. S. Spruce Lumber Co.* v. *Shumate*, 118 Va. 471, 87 S. E. 723, is cited by the defendant, and the contention is made that the decision therein conclusively shows that there could be no recovery in the instant case. Such is not our interpretation of that decision. The demurrer was sustained in the *Shumate Case* because the declaration showed that the precautions taken by the plaintiff were wholly and

necessarily ineffective, and that he thereafter neglected
to look for a train, notwithstanding his subsequent
opportunity to do so effectively before entering the
track.    He stopped at a place where he could only
have made looking of avail by leaving his buggy and
going forward to a point which his view would not be
obstructed, but without doing that, and without
looking again after he had passed the obstruction, he
proceeded without further precaution to cross the
track.    As was said by Judge Cardwell, who delivered
the opinion of the court: "The inference necessarily to
be drawn from the facts stated is that the plaintiff
either did not look for the approaching train before
going on the railroad track, at a point after passing
the obstructions from which he could have seen, had
he looked, the engine and car which struck the buggy
in which he was riding, or upon passing the obstruction,
the approaching engine and car was seen and the
occupants of the buggy recklessly undertook to cross
the track before the car reached the crossing, in either
of which events, the contributory negligence of the
plaintiff would bar his recovery in this action."

[5] In *Purcell* v. *Wash. & O. D. R. Co.*, 132 Va. 325,
111 S. E. 300, 302, we said: "The gist of the decision
in the *Shumate Case*, in so far as that decision is here
involved, is that when a traveler on a highway under-
takes to cross a railroad track, he must look and listen
at such time and place as will make looking and
listening effective, and that, if his allegations or proof
show that he looked and listened where looking and
listening would do no good, he makes a case of negli-
gence on his own part, provided his failure to more
effectively look and listen is 'unexplained.' "

The case of *Wash. & O. D. Ry. Co.* v. *Zell*, 118 Va.
755, 88 S. E. 309, is also relied upon by the defendant,

but we do not think it is in point here. In that case there was nothing to indicate that the occupants of the automobile exercised any care whatever, or looked or listened at all, notwithstanding the fact that they had ample opportunity to do so.

In *Southern Ry. Co.* v. *Bryant*, 95 Va. 212, 219, 28 S. E. 183, 185, Judge Riely, in delivering the opinion of the court, said: "It is without doubt a general rule that a person about to cross a railroad track—even at a public crossing—must exercise ordinary care and prudence. He must use all his faculties to avoid danger. He should both look and listen. He should look in each direction from which a train could come, and if not in sight, listen for its approach. And if warned by his faculties of the near approach of a train, it is his duty to keep off the track until it has passed by, or no recovery can be had for any injury he may sustain. This is the unquestioned law in every jurisdiction of which we are aware. *Johnson* v. *Chesapeake & O. R. Co.*, 91 Va. 179, 21 S. E. 238, and the authorities there cited.

[6] "But while this is the general rule, it is not inflexible, nor wholly without exception. It would be unreasonable to require a traveller, upon approaching a railroad crossing over a highway to look, when, by reason of the nature of the ground or other obstruction, he could not see; in other words, when compliance with the general rule would be impracticable or unavailing. Where the view of the track is obstructed, and the railroad company has failed to give notice of the approach of its train to a crossing upon the highway, and a person in attempting to go across the track, not being able to see the train on account of obstructions, and being obliged to act upon his judgment at the time of crossing, is injured, the propriety of his going upon

the track under such circumstances is not a question of law to be decided by the court, but a matter of fact to be determined by the jury. 2 Wood on Railroads, p. 1527; Beach on Con. Neg. (2nd ed.), sec. 196; *Norfolk & W. R. Co.* v. *Burge,* 84 Va. 68, 4 S. E. 21; *Smedis* v. *Brooklyn, etc., R. Co.,* 88 N. Y. 13; and *Ormsbee* v. *Boston, etc., R. Co.,* 14 R. I. 102."

In *Southern Ry. Co.* v. *Aldridge,* 101 Va. 142, 146, 43 S. E. 333, 334, Judge Keith, in delivering the opinion of the court, said: "This court has never decided that as a matter of law it was the duty of a person approaching the crossing of a railroad to *stop,* look, and listen for an approaching train. It has been said in numerous cases that the railroad track itself was a signal of danger, and imposed upon one approaching it the duty to look and listen, but it has in no case been held that it was his duty to *stop* in order to look and listen, or that it was his duty when in a vehicle to get out in order to look and listen. On the other hand, it has been said that the degree of care and caution to be exercised depended upon the facts and circumstances of the particular case, and we have had no occasion to say that in no case would a traveller be required to *stop* in order to look and listen."

The case of *Seaboard Air Line Ry. Co.* v. *Abernathy,* 121 Va. 173, 92 S. E. 913, is quite similar to this one in its facts, and the principal defense relied upon was, as here, that the plaintiff was guilty of contributory negligence in attempting to drive his automobile across the tracks without stopping to look and listen. In that case the public highway was intersected by three tracks of the defendant company known as the "connection track," the "house track," and the "mill track." Abernathy was entirely familiar with the

crossing and was driving his automobile over it.   His
view was cut off by the cars on the house track.   His
testimony was that when he got to the crossing the
cars on each side were close up to the road; that he
looked and listened all he could without stopping the
automobile; that he was running as slow as he could
without stopping; that he looked for a train and then
looked over the cars to see if he could see any smoke;
that when he got to the connection track the car
which struck him was within six feet of him and there
was no chance for him to get out of the way, and that
he saw the car as soon as there was any possible
chance of seeing it.

To show the pertinency of what the court said in the
*Abernathy Case* to the defense in the instant case, we
quote briefly from the petition upon which the present
writ of error was granted, as follows: "The driver
testified that he was driving only about four miles an
hour, that his truck was making some noise, but very
little.   Had he stopped and listened either on the
team track or storage track in the nature of things
he was bound to have heard the approach of the train."

In dealing with a similar contention in the *Abernathy
Case,* Judge Prentis, speaking for this court, said:
"In this case counsel for the company appear to base
their charge of contributory negligence imputable to
Abernathy on his failure to stop upon the house
track between the stationary cars in the opening made
in the train for the purpose of permitting travelers to
cross that track, for this was the only place at which
he could possibly have stopped and had any view of
the detached cars approaching on the connection
track.   Doubtless, if he had stopped upon that house
track for the purpose of making such an investigation
and been injured because these cars were brought

together suddenly, a demurrer to the evidence would have been sustained upon the ground that there can hardly be a more dangerous place for an automobile to stop than on a railroad track between cars recently uncoupled for the purpose of opening the highway.

"There were only eight feet, six inches, between the inside rails of the two tracks, and by the time the driver of the automobile had cleared the overhang of the cars upon the house track, the front of his machine must have been upon the connection track, or so close thereto as to expose him to extreme danger. If, however, he had stopped his car before getting upon the house track and gone forward to observe the condition of things upon the connection track and found the crossing apparently safe, by the time he had again started his automobile and attempted to cross, a dangerous situation might have developed—indeed, an accident similar to this very accident might have occurred. Under these circumstances, it seems to be peculiarly appropriate that the question as to whether or not the plaintiff was guilty of contributory negligence should have been submitted to the jury, and certainly it would have been error for the lower court to have told the jury as a matter of law that the plaintiff should, within the space of less than eight feet, six inches, have been able, while his car was slowly moving, to look in both directions and stop in time to have avoided the accident."

[7] We do not overlook the fact that, unlike the *Abernathy Case*, the driver in this case was accompanied by a boy who could have gone forward and piloted him safely across. But the defendant, who knew even better than the driver, that the crossing was usually blocked, kept no flagman there, and probably assumed as he did that the crossing required no such precaution.

[8] Cases may and do arise in which the courts properly hold that undertaking to cross a railroad track without stopping to look and listen is negligence which, as a matter of law, bars a recovery. As Judge Cardwell said in the *Shumate Case, supra,* such conduct "is, if unexplained, contributory negligence *per se* as a matter of law." In this case an explanation is offered. The driver did not stop, but he reduced his speed to about four miles an hour, looked and listened as effectively as he could have done if he had stopped, and perhaps acted as an ordinarily prudent man would have done in attempting to cross the tracks.

Under the circumstances as disclosed by the evidence we have reached the conclusion that upon the question of contributory negligence there is room for a fair difference of opinion, and that the case is not controlled by the principles announced in the *Shumate* and *Zell Cases,* but rather by those laid down in *Southern Ry. Co.* v. *Bryant, supra,* and *Seaboard Air Line Ry. Co.* v. *Abernathy, supra.*

[9] It is next insisted that the court erred in refusing to give defendant's instruction No. 6, which was as follows: "The court instructs the jury that if they believe from the evidence that the cars which were on the tracks parallel to the track on which the accident occurred were so placed that they obstructed the view of George Brown, the driver of the truck, to such an extent that he could not see the approaching train without stopping, then it was his duty to stop in a place of safety and use reasonable care to ascertain if a moving train was upon said track, and if they believe from the evidence that it was necessary for him to stop and get out of the truck in order to see and he failed to stop and get out of the truck, then they shall find for the defendant."

This instruction did not correctly state the law as applied to the evidence in the case. It dealt solely with the question of vision, and would have told the jury, in effect, that if they believed from the evidence that it was necessary for the driver to stop and get out of the truck in order to see the train, and he failed to stop and get out, they must find for the defendant. It thus amounted plainly to a peremptory instruction for the defendant, because it directed a verdict in defendant's favor if the plaintiff could not see the train from the truck, and the evidence shows beyond dispute, that, whatever the driver may have thought of the situation before he made the experiment, his view of the pass track and of the train thereon was in fact absolutely cut off. The instruction ignored and excluded from the jury any consideration of the driver's caution in running slowly, listening for a train, and depending upon signals from the bell and the whistle, which it was the defendant's duty to give. If there had been evidence tending materially to show that the noise of the motor or of the gear or wheels of the truck, or outside noises (as, for example, of a near-by mill or rock crusher) would have made listening of no avail, and the instruction had properly embodied a reference to such evidence, then the defendant would have been entitled to an instruction submitting to the jury the question whether the driver ought, in the exercise of due care, to have stopped and gone or sent ahead; but under the evidence as it was the instruction, especially in the form as offered, was properly refused.

[10] The remaining assignment charges that the court erroneously instructed the jury to disregard all of the defendant's evidence bearing upon the question of contributory negligence.

Section 6092 of the Code provides as follows:

"If the defendant in any action of tort intends to rely upon the contributory negligence of the plaintiff as a defense to the action, he shall so state in writing before the trial begins, giving the particulars thereof as fully as the plaintiff is required to state the negligence of the defendant in his declaration, or bill of particulars, but the defendant shall not be precluded from relying upon the contributory negligence disclosed to the defendant by the plaintiff's testimony."

The original of this statute (Acts 1916, p. 506) provided that if the defendant intended to rely on contributory negligence of the plaintiff as a defense to an action for personal injuries "then, upon motion, such contributory negligence shall be set forth in a bill of particulars, etc." The revisers of the Code changed this, and the statute now makes the filing of the statement in any action of tort, independent of a motion by the plaintiff or a direction by the court, a condition precedent to the defense of contributory negligence, except as disclosed by the plaintiff's testimony.

[11, 12] The learned counsel for the defendant insists, in the first place, that the plaintiff waived his right to rely on the statute in question by failing to object to certain evidence introduced by the defendant tending to show contributory negligence on his part. The evidence here referred to was that the smoke stack and part of the cab of the engine projected far enough above the top of the stationary cars to enable the driver to discover the presence of the train, and that the engine was emitting smoke and making noise to such an extent as that the driver in the exercise of due care could and would have seen and heard enough to warn him of the approaching train. The plaintiff

did not object to any of this evidence, and it is argued that the failure to object operated as a waiver of the benefit of the statute.

This position is not tenable. The meaning of the statute is plain. Its clear purpose is to cut off the defense of contributory negligence, in the absence of the required statement in writing, except in so far as that defense may be based upon facts disclosed by the plaintiff's testimony. We need not here decide whether the statute could be waived, because there is nothing in this case from which a waiver can fairly be inferred. So far as appears, there was nothing in the offer of the evidence in question which necessarily put the plaintiff on notice that it was intended primarily to support a claim that the plaintiff was guilty of contributory negligence. The declaration charged that the defendant obstructed the view of the tracks by coal cars, and had operated its train without warning of any kind to the plaintiff. These were charges of primary negligence, and evidence as to the height of the smoke stack, the discharge of smoke therefrom, and the noise of the engine was admissible in rebuttal of such charges and of the plaintiff's evidence to sustain them—as much so, for example, as would have been evidence tending to show that there were no cars at all, or only very low, flat cars standing on the tracks. Being clearly admissible for this purpose, we cannot say that the plaintiff must have understood and impliedly agreed that the evidence was introduced for the further purpose of showing contributory negligence. The statute is mandatory, and the situation, as presented by the record, is lacking in any such evidence of notice to and intention by the plaintiff as to create a waiver. *Cary* v. *Insurance Co.*, 127 Va. 236, 246, 103 S. E. 580; *A. C. L. R. Co.* v. *Warrington*, 129 Va. 331, 340, 341, 106 S. E. 341.

There being no compliance with or waiver of the statute, the defendant was limited in its defense to (1) the failure of the plaintiff to show by a preponderance of evidence that the injury was proximately caused by the negligence charged in the declaration, and (2) to the contributory negligence of the plaintiff as disclosed by his own testimony.

These defenses were fully and fairly submitted to the jury. By explicit instructions given at the defendant's request, they were told that the burden was on the plaintiff to prove the negligence charged in the declaration by a preponderance of the evidence, and that such negligence was the efficient and proximate cause of the accident.

Nothing in the other instructions in any way cut off or restricted the defendant's right and opportunity to rely upon either of the two defenses to which it was entitled. But for the statute a third defense would have been available to it, namely, the plaintiff's contributory negligence as disclosed by the defendant's evidence. All that the instructions complained of did was to follow the statute and exclude any reliance on the last named defense. They did not, as contended by counsel for the defendant, exclude from the jury a due consideration of evidence which it introduced and had the right to introduce on the general issue in defense of the charges in the declaration. These charges, as the jury were plainly told, had to be proved by a preponderance of proof on the part of the plaintiff, and in passing upon the weight of the evidence as to such charges they were obliged to consider that which had been offered by the defendant. The instructions in this respect were so plain that the jury could not have misunderstood them.

The conclusion of the whole matter upon this branch

of the case, as we see it, is as follows: The plaintiff, having charged the defendant with negligence in obstructing the view of the tracks and carelessly operating its train over the crossing without warning, introduced proof tending to sustain each of these charges. The defendant failed to comply with section 6092 of the Code, but introduced proof in conflict with that of the plaintiff tending to show that it had not done any of the acts of negligence with which it was charged. There were circumstances disclosed by the plaintiff's evidence from which his contributory negligence might be inferred, and there also appeared in the defendant's evidence further circumstances which, if believed by the jury, would have strengthened the defense of contributory negligence. The court told the jury to find for the defendant unless they believed from a preponderance of the evidence that the negligence charged in the declaration was proved, and was the proximate cause of the injury, and also told them to find for the defendant if they believed from the plaintiff's testimony that he was guilty of contributory negligence, but that as to the last defense they could not consider the evidence introduced by the defendant. This was the law of the case, and we find no error in the instructions.

[13] It is insisted, in the very able brief of counsel for the defendant, that the plaintiff's alleged contributory negligence in stopping to look and listen was, for the first time, "disclosed to the defendant by the plaintiff's testimony," and that nothing in the statute prohibited it from following up the defense thus disclosed by a development of all the facts with reference thereto. It is said that any other construction of the statute would be intolerably unfair.

This argument is plausible but not sound. There

are few negligence cases in which the defendant does not possess sufficient knowledge of the salient facts far enough in advance of the trial to determine whether the defense of contributory negligence will be invoked. In the few cases where this is not true, and in all cases in which the particulars of the defence are not stated as fully as they would have been but for some serious surprise to the defendant in the plaintiff's evidence, the ends of justice can be met in the trial court, as conditions may require, either by a continuance of the case to allow an original compliance with the statute, or by an amendment of the statement of grounds of defense already filed, with or without a continuance, as may be proper. We have no doubt that one of the courses here suggested could be taken in any proper case under the liberal interpretation which we have held should be placed on section 6104 of the Code. As a general rule section 6092 will only harm the defendant where a compliance with its terms has been overlooked.

Interpreted and administered as contended for by the defendant in this case, the statute would be susceptible of abuse, and might often force the plaintiff, after relying on the defendant's failure to comply therewith, to meet an unexpected issue. If it be said that such a result could be avoided by according the plaintiff in a proper case time and opportunity to meet the issue, the answer is that this would be an inverted administration of the statute, the primary purpose of which was to impose a limitation on the defendant.

For the reasons stated, the judgment is affirmed.

*Affirmed.*